# Richmond.

## Chesapeake and Ohio Railway Co. v. Hoffman.

### January 14, 1909.

1. Pleading—*Declaration—Sufficiency.*—A declaration is sufficient if it apprises the defendant of the ground of complaint, and states sufficient facts to enable the court to say upon demurrer that the plaintiff is entitled to recover if the facts stated are proved.

2. Pleading—*Declaration—Matters of Evidence.*—In an action to recover injuries received while engaged in work involving many details, the details of the method employed by the defendant may properly be the subject of proof, although not specifically stated in the declaration. The object of the declaration is not to set out all the facts and circumstances which are to be disclosed in the evidence, but merely to give to the defendant such reasonable information of the ground of complaint as will enable him fairly to present his grounds of defense.

3. Evidence—*Opinions.*—In an action to recover damages for a personal injury it is not error to permit the plaintiff to testify whether he is capable of doing, since he received the injury, such work as he had done theretofore.

4. Trial—*Withdrawal of Evidence—Statements of Counsel.*—If, when a question is asked a witness, objection is made thereto, and the propounder withdraws it, saying: "We would rather withdraw the question than to give him any show of an appeal," the fact that such statement was made in the presence of the jury is not prejudicial to the objector.

5. New Trial—*Improper Evidence—Harmless Error.*—The verdict of a jury should not be set aside for the improper reception of evidence, where, as in this case, the court can see that such evidence could not have prejudiced or influenced the minds of the jury.

6. Damages—*Personal Injury—Elements of Damage.*—In estimating the damages for a personal injury inflicted on the plaintiff by the negligence of defendant's servants, it is proper to instruct the jury that they may take into consideration the plaintiff's mental and physical suffering arising from his injuries, his loss of wages from the time he was prevented by said injuries from

following such calling or business as he could have followed but for said injuries, and that the amount of damages should be reasonable and just to both parties, and should compensate the plaintiff for the loss of money which he would probably earn had not the injuries been inflicted.

7. VERDICTS—*Excessive Damages—Personal Injury.*—A verdict for $2,500 for personal injuries cannot be set aside as excessive where it appears that the plaintiff fell more than thirty feet, that he was rendered unconscious, that his arm was mashed, his head hurt, his shoulder-blade dislocated, and his ankle badly sprained, and that he had not recovered from his injuries at the time of the trial.

8. MASTER AND SERVANT—*Railroads—Structures—Constitutional Law.*— An employee engaged in the restoration of a pier which is a part of the road-bed or track of a railroad—removing rotten timbers and substituting those that are sound—is within the terms of section 162 of the Constitution applicable to persons "engaged in the physical construction, repair or maintenance of the company's roadway, track, or any of the structures connected therewith."

9. CONSTITUTIONAL LAW—*Equal Protection of the Laws—Protection of Railroad Employees.*—Section 162 of the Constitution of this State, and the statute putting it into operation, for the better protection of employees of railroad companies, extend to all railroads alike, and do not violate the provision of the Fourteenth Amendment of the Constitution of the United States forbidding any State to deny to any person within its jurisdiction the equal protection of the laws. The State has the right to make reasonable classifications of legislation, and the hazardous character of the business of operating railroads renders it reasonable to enact laws for the better protection of their employees.

10. MASTER AND SERVANT—*Railroads—Negligence of Servant.*—A railroad company is under no greater obligation to care for the safety of one of its servants than he is to care for himself, and, generally, any negligence on the part of a servant amounting to the want of ordinary care, which is the proximate cause of his injury, will bar a recovery against the company.

11. MASTER AND SERVANT—*Safe Place—Repairing Unsafe Structures.*— The rule that the master is to furnish the servant a reasonably safe place in which to work does not apply to a servant employed to repair an unsafe structure. The very object of the employment is to render secure that which has become unsafe.

12. DEMURRER TO EVIDENCE.—*Room for Difference of Opinion.*—On a demurrer to the evidence by the defendant, in an action to re-

cover damages for a personal injury negligently inflicted on the plaintiff by the defendant, if the evidence is such that reasonable men might well differ as to whether the defendant was guilty of negligence, or the plaintiff, by his own negligence, so far contributed to his injury as to bar recovery, the demurrer should be overruled.

Error to a judgment of the Corporation Court of the city of Newport News in an action of trespass on the case.   Judgment for the plaintiff.   Defendant assigns error.

*Affirmed.*

On the trial the plaintiff tendered one instruction on the measure of damages which was given, and is copied in the opinion below.   The defendant tendered three instructions on the same subject, which the trial court refused to give.

The following are copies of the declaration, grounds of demurrer assigned to the declaration, instructions refused and specifications of grounds of demurrer to the evidence:

### The Declaration.

"W. F. Hoffman, plaintiff, complains of the Chesapeake and Ohio Railway Company, a corporation, defendant, of a plea of trespass on the case, for this, to-wit:

"That heretofore, to-wit, on the 18th day of October, 1906, and for a long time theretofore and thence hitherto, the said defendant was, and still is, the owner of a certain railway, roadbed, and track, in the city of Newport News, Va., extending over and across River Road, a street in said city, and operated and propelled, and caused to be operated and propelled, its cars over and along that part of its said roadbed and track extending across said street, and for, to-wit, a distance of 200 feet on each side of the said street, and laid, built, and constructed upon a trestle or framework, the property of the said defendant.

"That constituting a part of said trestle or framework was on said last mentioned date a heavy piece of timber, to-wit, 12 inches wide, 12 inches thick, and 20 feet long, commonly called a cap sill, resting upon and supported, in part, by four upright propping posts, placed under the same and extending thence to the ground, commonly called plumb posts, for a distance of, to-wit; 30 feet.    That said cap sill, resting upon said plumb posts, fitted in between two other posts, one at each end of said cap sill, also called plumb posts or end uprights, and was fastened and affixed to said last mentioned plumb posts or end uprights by heavy strips of timber laid along both sides of said cap sill, commonly called sash braces, which, in order to give reasonably necessary support to said cap sill, of right should have been bolted or affixed to, on, and along the sides of the said cap sill as well as to said last mentioned plumb posts, or end uprights, but which the said defendant had negligently and carelessly left unbolted and insufficiently affixed to said cap sill, and extending across and beyond said last mentioned plumb posts or end uprights.    That resting upon said cap sill, at one end thereof, was a large, long, and heavy piece of timber, to-wit, 12 inches wide, 4 inches thick, and 30 feet long, commonly called a purlin, which extended, to-wit, 15 feet, on each side of said cap sill, which said purlin was supported at one end by a cap sill similar to the one hereinbefore mentioned, or by some other means of support, and which said purlin of right at the other end should have been supported by being lashed up, or otherwise, but the said defendant had negligently and carelessly left the said last mentioned end of the said purlin unsupported.

"That the said defendant on said last mentioned date had in its service and employment servants and carpenters engaged in working upon and repairing said trestle or framework under the direction, management, and control of a foreman or boss. That the said plaintiff was a carpenter and one of the said servants so employed and engaged in working upon and repairing said trestle or framework and thereupon, it became and

was the duty of the said defendant to use ordinary care to provide safe and sound materials and a safe place for its said servants and carpenters to work, and in particular for the said plaintiff to work, and to use and exercise such ordinary care as was reasonably calculated to insure the safety of its said servants and carpenters, and particularly that of the said plaintiff.

"That, in the repairing of said trestle or framework, it became and was deemed necessary by the said defendant, in consequence of its decayed condition, which decayed condition was well known to the said defendant, to remove and replace the said first mentioned cap sill, and the said plaintiff was, under the direction, management, and control of said defendant's said foreman or boss, engaged in and assisting the said other servants in removing and repairing the said cap sill. That the said foreman or boss caused two of the said first mentioned plumb posts by which, in part, the said cap sill was supported, as aforesaid, to be removed and taken away, leaving only the two center plumb posts of said four plumb posts remaining in position under the said cap sill. That, in order to remove said cap sill, it became and was necessary to disconnect it from the plumb posts or end uprights between which the said cap sill fitted, as hereinbefore described, to which it was fastened or affixed by said sash braces, and thereupon, in the discharge of his duty in this regard, and in the usual and customary manner of disconnecting cap sills from plumb posts or end uprights and in the plain view of the said plaintiff, one of the said other servants entered upon the work of disconnecting the said cap sill from the said plumb posts or end uprights by sawing in two the said sash braces at a point near to and outside of where the said purlin rested upon said cap sill, and placed himself in a position where the weight of his body was, in addition to that of the said purlin, resting upon said cap sill, and partly sawed in two the said sash braces at the point above designated, and then called

upon and requested the said plaintiff, as he had a right to do, to complete the said sawing in two of the said sash braces.

"That the said defendant knew, or by the use of ordinary care might have known, that one end of said purlin was not supported and that in consequence of the decayed condition of said cap sill and of the removal of the said two plumb posts, as aforesaid, and in consequence of the failure, neglect, and omission to properly bolt or properly affix or fasten the said sash braces to the said cap sill, it became and was necessary to put propping posts under the said cap sill, or under the said purlin, which rested, as aforesaid, thereon, or in some other way to safeguard the said cap sill before the support given to it by the said sash braces being fastened or affixed to the said plumb posts or end uprights, as aforesaid, should be removed, in order to prevent its giving way under the combined weight of said purlin and of a man when said sash braces should have been sawed in two.

"That the said plaintiff was ignorant of the fact that one end of the said purlin was unsupported, and of the necessity of in some way safeguarding the said cap sill before the support given it by being fastened or affixed to said plumb posts or end uprights by said sash braces should be taken away by sawing the same in two, in order to prevent its giving way under the combined weight of said purlin, and that of a man when and after the said sash braces should have been sawed in two, and having been then and there lulled into security by the words and conduct of his said fellow workman, the said plaintiff undertook to complete the sawing in two of the said sash braces, which sawing in two had been begun by his said fellow workman, placing himself where, as of necessity he had to do, the weight of his body was added to that of the said purlin, and together with it rested on said cap sill, and sawed in two the said sash braces, when, and in consequence of the decayed condition of said cap sill, and the negligence, failure, and want of

ordinary care of the said defendant in not putting propping posts or supports under the said cap sill, or under the said purlin, or in some other manner giving support to the said cap sill, and of the negligence and failure to use ordinary care of the said defendant in giving support to the said cap sill by properly bolting or otherwise affixing said sash braces thereto, as aforesaid, the said cap sill broke and gave way under the combined weight of the said purlin and the weight of the body of said plaintiff when and as soon as he had completed the sawing in two of said sash brace; and the said plaintiff was, in consequence of said negligence, carelessness, and want of ordinary care on the part of the said defendant caused, in consequence of the breaking of the said cap sill, to fall a distance of, to-wit, thirty feet, onto and upon the ground along with the broken piece of the said cap sill, and to be greatly bruised, hurt, injured and disabled in and upon his body, head, arms, legs, feet and ankles, and to suffer great mental and bodily pains from thence hitherto, and permanent bodily injury from thence hitherto, and to lay out and expend a large sum of money, to-wit, the sum of $100, in and about his being relieved from his sufferings and for medical attention.

"And for this also, to-wit:

"That heretofore, to-wit, on the 18th day of October, 1906, and for a long time theretofore and thence hitherto, the said defendant was, and still is, the owner of a certain other railway, road-bed and track, in the city of Newport News, Va., extending over and across River Road, a street in said city, and operated and propelled, and caused to be operated and propelled, its cars over and along that part of its said road-bed and track extending across said street, and for, to-wit, a distance of 200 feet on each side of said street, and laid, built, and constructed upon a trestle or framework, the property of the said defendant.

"That constituting a part of said trestle or framework was, on said last-mentioned date, a heavy piece of timber, to-wit,

12 inches wide, 12 inches thick and 20 feet long, commonly called a cap sill, resting upon and supported, in part, by four upright propping posts, placed under the same and extending thence to the ground, commonly called plumb posts, for a distance of, to-wit, thirty feet. That said cap sill, resting upon said plumb posts, fitted in between two other posts, one at each end of said cap sill also called plumb posts or end uprights, and was fastened and affixed to said last-mentioned plumb posts or end uprights by heavy strips of timber laid along both sides of said cap sill, commonly called sash braces, which, in order to give support, in addition to that given by said plumb posts, as aforesaid, were bolted or affixed thereto on and along the sides of said cap sill and extending across and beyond said last-mentioned plumb posts or end uprights; that resting upon said cap sill at one end thereof was a large, long and heavy piece of timber, to-wit, 12 inches wide, 4 inches thick and 30 feet long, commonly called a purlin, which extended, to-wit, fifteen feet on each side of said cap sill, which said purlin was supported at one end by a cap sill similar to the one hereinbefore mentioned, or by some other means of support, and which said purlin of right at the other end should have been supported by being lashed up, or otherwise, but the said defendant had negligently and carelessly left the said last-mentioned end of the said purlin unsupported.

"That the said defendant, on said last mentioned date, had in its service and employment, servants and carpenters engaged in working upon and repairing said trestle or framework under the direction, management and control of a foreman or boss. That the said plaintiff was a carpenter, and one of the said servants so employed and engaged in working upon and repairing the said trestle or framework, and thereupon it became and was the duty of the said defendant to use ordinary care to provide safe and sound materials and a safe place for its said servants and carpenters to work, and in particular for the said plaintiff to work, and to use and exercise such ordinary care as was reasonably calculated to insure the safety of its said

servants and carpenters, and particularly that of the said plaintiff.

"That, in the repairing of the said trestle or framework, it became and was deemed necessary by the said defendant, in consequence of its decayed condition, which decayed condition was well known to the said defendant, to remove and replace the said first mentioned cap sill, and the said plaintiff was under the direction, management and control of said defendant's said foreman or boss engaged in and assisting the said other servants in removing and repairing the said cap sill; that the said foreman or boss caused two of the said first mentioned plumb posts by which, in part, the said cap sill was supported, as aforesaid, to be removed and taken away, leaving only the two center plumb posts of said four plumb posts remaining in position under the said cap sill; that, in order to remove said cap sill, it became and was necessary to disconnect it from the plumb posts or end uprights between which said cap sill fitted, as hereinbefore described, to which it was fastened or affixed by said sash braces, and thereupon, in the discharge of his duty in this regard, and in the usual and customary manner of disconnecting cap sills from plumb posts or end uprights, and in the plain view of the plaintiff, one of the said other servants entered upon the work of disconnecting the said cap sill from the said plumb posts or end uprights by sawing in two the said sash braces at a point near to and outside of where the said purlin rested upon the said cap sill and placed himself in a position where the weight of the body was, in addition to that of the said purlin, resting upon the said cap sill and partly sawed in two the said sash braces at the point above designated, and then called upon and requested the said plaintiff, as he had a right to do, to complete the said sawing in two of the said sash braces.

"That the said defendant knew, or by the use of ordinary care might have known, that one end of said purlin was not supported, and that, in consequence of the decayed condition

of the said cap sill and of the removal of the said two plumb posts, as aforesaid, it became and was necessary to put propping posts under the said cap sill, or under the said purlin, which rested, as aforesaid, thereon, or in some other way to safeguard the said cap sill before the support given to it by the said sash braces being fastened or affixed to the said plumb posts or end uprights, as aforesaid, should be removed, in order to prevent its giving way under the combined weight of said purlin and of a man when said sash braces should have been sawed in two.

"That the said plaintiff was ignorant of the fact that one end of the said purlin was unsupported and of the necessity of in some way safeguarding the said cap sill before the support given it by being fastened or affixed to said plumb posts or end uprights by said sash braces should be taken away by sawing the same in two, in order to prevent its giving way under the combined weight of said purlin and that of a man, and when and after the said sash braces should have been sawed in two, the said sash braces being bolted or affixed to the said cap sill along the sides thereof, as aforesaid, and, having been then and there lulled into security by the words and conduct of his said fellow-workman, the said plaintiff undertook to complete the sawing in two of the said sash braces, which sawing in two had been begun by his said fellow-workman, placing himself where, as of necessity he had to do, the weight of his body was added to that of the said purlin, and together with it rested on said cap sill, and sawed in two the said sash braces, when, and in consequence of the decayed condition of the said cap sill, and the negligence, failure and want of ordinary care of the said defendant in not putting propping posts under the said cap sill or under the said purlin, or in some other manner giving support to the said cap sill, the said cap sill broke and gave way under the combined weight of the said purlin and the body of said plaintiff when and as soon as he had completed the sawing of the said sash braces in two, and the said plain-

tiff was, in consequence of said negligence, carelessness and want of ordinary care on the part of the said defendant caused, in consequence of the breaking of the said cap sill, to fall a distance of, to-wit, thirty feet, onto and upon the ground along with the broken piece of the said cap sill, and to be greatly bruised, hurt, injured and disabled in and upon his body, head, arms, legs, feet and ankles, and to suffer great mental and bodily pains from thence hitherto, and permanent bodily injury from thence hitherto, and to lay out and expend a large sum of money, to-wit, $100, in and about his being relieved from his sufferings and the medical attention..

. "And the said plaintiff says that by reason of the premises, as set forth in the foregoing two counts of this declaration and in each of them, he has suffered and demands damages to the extent of $5,000. And therefore he brings his suit."

## "DEMURRER TO DECLARATION."

"The said defendant, by its attorney, comes and says that the said declaration, and each and every count thereof, is insufficient in law, and for grounds of demurrer alleges the following:

"First. That said declaration, and each and every count thereof, is so indefinite that it does not apprise the defendant of the nature of the case against it, or the alleged negligence of said defendant, for which alleged negligence a recovery is sought.

"Second. That each and every count of said declaration does not show what or who operated and propelled, or caused to be operated or propelled, cars over and along that part of said road-bed and track extending across said street, as in said declaration, and each and every count thereof is alleged.

"Third. That the alleged duty of said defendant, charged in the first count of said declaration, to bolt or affix the so-called sash brace to, on and along the sides of the so-called

cap sills, was no duty whatever resting on defendant, and further, if such duty existed, it was not a duty owing to this plaintiff, or such a duty as that the defendant would be liable to plaintiff for its failure to observe the same.

"Fourth. That the first count of the said declaration does not specifically allege how the so-called sash brace should have been bolted or affixed, or otherwise fastened to the said so-called cap sills, in what manner, by what means, or otherwise howsoever, and said first count does not charge any duty for the breach whereof the defendant is liable to the plaintiff, or otherwise howsoever.

"Fifth. That the first count of said declaration does not allege wherein the said defendant was negligent in leaving the so-called sash brace unbolted and insufficiently affixed to said so-called cap sills; nor does said count show with legal particularity what negligence or carelessness, if any, existed in allowing said so-called sash brace to extend across and beyond so-called plumb posts or end uprights; nor does the said declaration show that it was the duty of said defendant to construct said trestle otherwise than as constructed, or, if it was said duty, how and in what way said duty was owing to the plaintiff herein, or in what manner said defendant negligently and carelessly performed its duty; nor does said first count show in what the alleged negligence or carelessness of said defendant consisted in leaving the so-called sash brace unbolted and insufficiently affixed, or otherwise.

"Sixth. That the said declaration, and each and every count thereof, does not show any duty on the part of the defendant to support, at the alleged unsupported end, the so-called purlin, and why and in what manner the so-called purlin should have been lashed up, or any duty whatsoever on the part of said defendant, to lash up so-called purlin, or how said duty, if any, became and was owing to the said plaintiff, or how the plaintiff suffered or was injured thereby, or wherein said defendant was negligent or careless in leaving said so-called purlin un-

supported, or how the alleged negligence or carelessness of said defendant in so leaving said so-called purlin unsupported, as charged, operated, or in any wise contributed to plaintiff's damage, hurt, or injury.

"Seventh. The said declaration does not, nor does any count thereof, show how it was and became the duty of the defendant to furnish safe and sound materials, as therein charged, and a safe place, or what unsafe or unsound materials, if any, were furnished, or in what other way howsoever the said defendant failed or omitted to perform its legal duty in the premises.

"Eighth. The said declaration, and each and every count thereof, shows that the said plaintiff was guilty of such negligence as would bar any recovery.

"Ninth. That the said declaration, and each and every count thereof, shows that the said defendant was not guilty of any negligence whatsoever, and, if the said defendant was guilty of any negligence, that the plaintiff was guilty of such contributory negligence as would bar any recovery herein.

"Tenth. The said declaration, and each and every count thereof, alleges that the said plaintiff placed himself 'where as of necessity he had to do, the weight of his body was added to that of said purlin, and together with it rested on said cap sill,' etc., without alleging how or why the said plaintiff so placed himself in said position, or that it became and was his duty to so place himself in said position."

"DEFENDANT'S INSTRUCTIONS REFUSED."

"No. 1. The court instructs the jury that they cannot allow the plaintiff any sum on account of any permanent injury to the mental health of the plaintiff.

"No. 2. The court instructs the jury that the income now earned and the probable future income which the plaintiff may earn from his grocery business is material to the question of the probable future earnings of the plaintiff, and the court in-

structs the jury that, in default of proof by the plaintiff of his earnings in such business, the jury may presume that his earnings from the said business exceed what his earnings would have been had the plaintiff remained in the same employment in which he had engaged prior to the injury.

"No. 3.  The courts instructs the jury that if they believe from the evidence that the plaintiff is now earning a greater sum in his grocery business than he would have earned if the injury had not occurred, and had he remained in his then present and then prospective employment, and further believe that the plaintiff's reasonable prospect of future earnings in his said grocery business equal or exceed what his prospective earnings would have been if the injury had not occurred, the jury cannot allow to the plaintiff any damages on the score of a lessened future earning capacity."

"SPECIFICATIONS OF GROUNDS OF DEMURRER TO EVIDENCE."

"(1) That the evidence fails to disclose any negligence whatever upon the part of the defendant, its servants or agents, on account of which the plaintiff could recover in this action.

"(2) Because the evidence discloses that the work whereon the plaintiff was engaged at the time of receiving the injury complained of was not such work as is referred to in section 162 of the Constitution of Virginia.

"(3) That, even if the evidence discloses that the work whereon the plaintiff was engaged at the time of receiving the injury of which he complains was of the character referred to in section 162 of the Constitution of Virginia, it further discloses that the case of the said plaintiff does not come within any of the provisos of the said section of the Constitution.

"(4) That, even if the evidence shows that the character of work in which the plaintiff was engaged at the time of receiving his injury was of the character referred to or comprehended in the said section 162 of the Constitution of Virginia of 1902

(Code 1904, p. 249), the evidence further discloses that the work whereon the plaintiff was engaged was not connected in any way with the risks ordinarily incident to railroad work, but presented merely the same dangers as would attend in the demolition of any ordinary building or structure in private ownership, and that the provisions of said section 162 of the Virginia Constitution cannot be applied to the case of the plaintiff in such manner as to prevent the defendant from the use of such defenses based on the doctrine of fellow servant, assumption of risk and other defenses, according as it would have been entitled thereto had the said injury occurred before the adoption of the said section of the Constitution, because under the circumstances of this case the application of said section 162 to the facts disclosed by the evidence contravenes the provisions of section 1 of the Fourteenth Amendment of the Constitution of the United States, and particularly that portion of said section which prohibits any State from denying to any person within its jurisdiction the equal protection of the laws.

"(5) Because the evidence discloses that the injury whereof the plaintiff complains was brought about, or contributed to, by the defendant's own negligence in a failure to use due care to prevent injury from causes and risks open and obvious, which were, or ought to have been, known by him.

"(6) That the evidence further discloses that, in addition to the negligence of the said defendant and co-operating therewith, the injury of the said plaintiff was caused by the negligence (if there be any negligence at all shown) of a fellow servant in the same department of labor and in the same character of employment, and that the said negligence, if any, of the said fellow servant, was a risk assumed by the plaintiff in his contract of employment.

"(7) The evidence further discloses that there were several ways of doing the said work open to the defendant and known to him, one or more of which the servant knew, or reasonably should have known, was safe, and the other of which the servant

knew, or reasonably should have known, was dangerous, and that the said plaintiff failed to adopt a safe way of doing the said work.

"(8) That the master, being engaged on the character of work disclosed by the evidence, performed all his duties to the said plaintiff when he provided for the use of the said plaintiff those appliances and instrumentalities by which the plaintiff could have done the work in a safe manner, and the said defendant is not responsible for the non-use of said appliances by the said plaintiff, or by his fellow servants, or the misuse of said appliances by either.

"(9) The evidence shows that the breaking of the said cap sill was caused by a defect therein not apparent to the defendant, but, on the contrary, it was apparent to the plaintiff, or should have been apparent to him in the exercise of ordinary care.

"(10) That the evidence discloses that the servant had better opportunities of observing the defects of the said cap sill than the defendant, or any inspecting agent of the defendant.

"(11) That the evidence discloses that the injury of which the plaintiff complains occurred incidental to an employment which was known to the plaintiff to be dangerous, and the dangers of which the plaintiff assumed.

"(12) That the plaintiff owed the duty of using reasonable care to provide for his own safety, and the evidence discloses that his opportunities for knowledge of any defect of the cap sill, or non-support of the cap sill or purlin, were greater, by the exercise of ordinary care, than those of the master by the exercise of a like degree of care.

"(13) Because the evidence discloses that the plaintiff was cutting away the support of a certain heavy timber, and that it was his duty before doing so to use reasonable care to ascertain whether the timber was otherwise reasonably supported, and to so provide for his own safety as that he would be secure from injury in the event of the falling of the said timber; and the

evidence discloses that such means had to the knowledge of the plaintiff been furnished by the defendant and were subject to his use.

"(14) That the evidence fails to disclose any negligence on the part of the said defendant.

"(15) That the evidence fails to disclose that the sash braces in the declaration mentioned should have been bolted or affixed to the sides of the cap sill, or that they were carelessly or negligently left unbolted or insufficiently affixed to said cap sill extending across the plumb post as in the declaration is alleged; but, on the contrary, discloses that, if the said sash braces had been so affixed, the injury would nevertheless have occurred, and the evidence further discloses that the duty of affixing and arranging all temporary supports, which in the exercise of ordinary care would have prevented the breaking of the said cap sill, resultant upon the cutting of the same, rested upon the plaintiff, and that the defendant in the knowledge of the plaintiff furnished reasonable means for such temporary support; and the evidence further shows that the office of the sash brace was not one of support for the said cap sill, but to prevent the rending or pulling apart laterally of the original structure of which it formed a part.

"(16) That the evidence discloses that instead of the said purlin being lashed up as the declaration charges of right it should have been that the same was negligently and carelessly left unlashed and unsupported by the said plaintiff, whose duty it was to lash the same before cutting the said sash brace.

"(17) That the evidence does not disclose any negligence upon the part of the defendant in the performance of its duty in the said declaration alleged 'to use ordinary care to provide safe and sound materials and a safe place for its said servants and carpenters to work, and in particular for the said plaintiff to work, and to use and exercise such ordinary care as was reasonably calculated to insure the safety of its servants and carpenters, and particularly that of the said plaintiff, on the

contrary, the evidence shows that the defendant performed all and singular of the said duties.

"(18) That it does not appear, as in the said declaration is alleged, that the defendant knew, or by the exercise of ordinary care could have known, of the decayed condition of the said cap sill. On the contrary, the evidence shows that the said cap sill presented the appearance of a sound timber except that portion of it which the plaintiff observed to be rotten.

"(19) That the evidence fails to disclose that the said plaintiff was 'under the direction, management and control of the said defendant's foreman or boss, engaged in and assisting the said other servants in removing and repairing the said cap sill,' as in the said declaration is alleged. On the contrary, the evidence shows that the said cap sill was not undergoing a process of reparation, but that the same was being removed by the plaintiff without specific direction upon the part of the said foreman or boss, and that the said plaintiff was provided by the defendant with all and every suitable appliance and instrumentalities for the safe removal of the same.

"(20) That the evidence shows that the said plaintiff in undertaking the work of sawing the said sash braces on the said purlin did so at the invitation of a fellow servant of precisely the same grade and authority as that of the said plaintiff, and the evidence further fails to disclose that the said fellow servant had any right to call upon the said plaintiff to finish the work which he had begun, or to request him to do so by any instrumentality involving greater danger to the user thereof.

"(21) The evidence fails to disclose that the defendant knew, or by the exercise of ordinary care might have known, that one end of the said purlin was not supported, and further fails to disclose any duty upon the part of the defendant to put propping posts under the cap sill or under the purlin. On the contrary, it shows that the duty of supporting the said cap sill and purlin rested upon the said plaintiff.

"(22) That the evidence discloses that, if the plaintiff was

ignorant of the fact that one end of the purlin was unsupported, such ignorance was negligence contributing to his injury.

"(23) That the evidence fails to disclose that the plaintiff was ignorant of the necessity of in some way safeguarding the cap sill before the sash braces were sawed in two. On the contrary, the evidence shows the same knowledge of safeguarding the said cap sill as that possessed by the defendant, and that, moreover, it was the duty of the said plaintiff to safeguard the same.

"(24) That the evidence fails to show that the said plaintiff was lulled into security by the words and conduct of his said fellow servants and workmen, and, even if the evidence had disclosed that he was so lulled, it was his duty to use reasonable care to observe the situation himself.

"(25) That the evidence discloses that the accident to the plaintiff was not as in the declaration is alleged, 'in consequence of said negligence, carelessness, and want of ordinary care upon the part of the said defendant caused to fall,' but, on the contrary, the evidence discloses that the fall of the said plaintiff was due to his own negligence, carelessness, failure to perform his duties, and his own want of ordinary care.

"Wherefore, for want of sufficient matter in that behalf shown to the jury in evidence aforesaid and because of the grounds aforesaid, the said defendant prays judgment, and that the jurors aforesaid be discharged from giving any verdict on the said issue, and that the plaintiff be barred from having or maintaining his said action against it, the said defendant."

*R. G. Bickford* and *S. O. Bland,* for the plaintiff in error.

*E. J. DeJarnette, Jr., W. B. Colonna* and *John W. Friend,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

While working as a mechanic upon a pier belonging to the

Chesapeake and Ohio Railway Company, Hoffman sustained injuries for which he brought suit, and the jury rendered a verdict in his behalf for $2,500, subject to a demurrer to the evidence.

Numerous rulings of the trial court were excepted to, and are now before us for review upon a writ of error awarded the railway company.

The first error assigned is that the demurrer to the declaration was overruled by the trial court.

The declaration is a lengthy one. The circumstances out of which the cause of action grew, and which it relates, are quite complicated, but we are of opinion that it meets all the requirements of proper pleading. It is sufficient to apprise the adverse party of the ground of complaint, and states sufficient facts to enable the court to say upon demurrer that the plaintiff is entitled to recover, if the facts stated are proved. *Hortenstein* v. *Va.-Carolina Ry. Co.*, 102 Va. 914, 47 S. E. 966.

With this general statement, we refer to the declaration itself without further discussion. We are of opinion that the demurrer was properly overruled.

Two bills of exception are taken to the admission of testimony over the objection of plaintiff in error.

The first is because the witness, Taylor, was asked by defendant in error: "In the usual course of pulling down these cap sills was it, or was it not, the custom to support the cap sill in some way, or to support the purlin?" To the asking of which question counsel for defendant excepted, on the ground that there was no appropriate allegation in the declaration under which the question could be asked, or the evidence admitted. But the court overruled the objection and permitted the witness to answer, who said: "Well, we use a block and fall on the end of these caps, after we had moved them over, to lower them down; but we didn't tie the caps up and let them stay there, or anything of that kind; we just simply throw the

block and fall on the end of them to lower them down after we break the post from under them."

It is true that this specific act is not mentioned in the declaration, but the declaration does disclose that the work was being done upon a trestle or pier, which constituted a part of the railway company's track; that the work involved demolition and construction, the taking out of decayed or insufficient parts and the substitution for them of sound and sufficient timbers; and the details of the method employed by the company in the performance of this work may properly be the subject of proof, although not specifically stated in the declaration; for the object of the declaration is not to set out all the facts and circumstances which are to be disclosed in the evidence, but merely to give to the defendant such reasonable information of the ground of complaint as will enable him fairly to present his grounds of defense.

The second exception is to the action of the court in permitting counsel to ask defendant in error, who was a witness in his own behalf, whether he was capable of doing since he received the injury such work as he had done theretofore. To this question counsel for plaintiff in error objected, because it would be to enable the witness himself to determine his capability for work at the time of the trial when he should have by proof shown his present condition and the amount he was capable of doing before, and leave it to the jury to determine the effect of the injury.

The ruling of the court was, we think, correct. It would be straining to an unreasonable extent the doctrine which limits opinion evidence to say that a witness should not be allowed to express an opinion as to the extent and effect of an injury received upon his capacity to labor. Certain it is that he is in a better position to know than anyone else can be, and as he testifies in the presence of the jury and is subject to cross-examination as to all the conditions upon which his opinion is

founded, we cannot think that it was error to permit him to testify.

The third bill of exception was because counsel for defendant in error were permitted to ask Dr. Newby whether he had ever had any patients to come under his direct charge who had received an injury by reason of a blow on the head, to which the witness answered: "Oh, yes, sir." Whereupon defendant in error, by counsel, asked the witness the following question: "What was the result in the other cases?" Thereupon plaintiff in error, by counsel, objected, but the court overruled the objection and permitted the witness to answer; but before the answer had been given counsel for defendant in error withdrew the question, saying: "It has occurred to us, your Honor, that we will not press that. We will withdraw it—his individual experience in that regard. We would rather withdraw the question than to give him any show of an appeal"; and the question was withdrawn. To the statement of counsel made before the court and jury, that they would rather withdraw the question than give the plaintiff in error any show of appeal, plaintiff in error excepted.

A case which could be prejudiced or injuriously affected by a circumstance so trivial must be of an exceedingly delicate and sensitive nature, and must rest upon an unstable and insecure foundation.

The fourth bill of exceptions is because defendant in error was allowed to ask the witness, C. C. Leake, who testified on behalf of the railway company: "What is the usual life of timber exposed as that was—the same character of timber?"

Plaintiff in error objected to this upon the ground that it did not refer to any charge contained in the declaration, and was not relevant to any issue in the case; and after the evidence was concluded, but before the case was submitted to the jury, plaintiff in error moved to strike out all the testimony of the witness, C. C. Leake, concerning the age of pier No. 3, and the

life of the timber used in construction thereof, because there was no allegation in the declaration under which it could be introduced, and the same was not relevant to any issue in the case.

We are not prepared to say that the evidence was irrelevant; but in view of the uncontradicted testimony as to the condition of the timbers in that pier, we have no hesitation in saying that its admission could have had no such prejudicial effect upon the minds of the jury as to justify the court in reversing the judgment for that cause. However opinions may differ as to the probable life of the timbers in that pier, there could be no diversity of opinion as to the fact that it was at the time of the accident and of the trial in large part utterly rotten and worthless. The wonder is that, with timbers apparently necessary to the structure in the condition in which they are shown to have been by the uncontradicted evidence in this case, the traffic of a railway company could have been moved over tracks laid upon this pier.

The assignments of error based upon the four bills of exception which we have considered are not well taken.

The fifth bill of exception is because, after the evidence had been concluded, the court instructed the jury "that in estimating the plaintiff's damages they may take into consideration his physical and mental suffering arising from his injuries received on the 18th day of October, 1906, his loss of wages from the time he was prevented by said injuries from following such calling or business as he could have followed but for said injuries, and that the amount of damages should be reasonable and just to both parties, and should compensate the plaintiff for the loss of money which he would probably earn had not the injuries occurred."

The sixth bill of exceptions is to the action of the court in refusing certain instructions asked for by plaintiff in error.

It will be observed that the instruction given and those refused were designed as a guide to the jury in the estimation

of damages. We are of opinion that the instruction given by the court correctly and sufficiently states the law to enable the jury to apply the evidence in determining what would be just compensation to the defendant in error for the injuries which he had sustained, provided they were received as the result of the negligence of plaintiff in error.

The railway company, after the evidence had been concluded, and the jury had been instructed, demurred to the evidence, and thereupon the jury found a verdict for $2,500, subject to the defendant's demurrer to the evidence. The railway company, through its counsel, moved the court to set aside this verdict because of errors in admitting, refusing to admit, excluding and failing to exclude evidence; because the verdict was contrary to the law and the evidence; because of misdirection and erroneous instructions given to the jury, and because the amount of damages awarded is excessive.

It appears that Hoffman fell more than thirty feet; that he was rendered unconscious; that his arm was mashed, his head was hurt, his shoulder-blade was dislocated, and his ankle badly sprained; and that he had not at the time of the trial recovered from these injuries. We think it plain that we cannot disturb the verdict as being excessive.

It only remains for us to consider whether or not the evidence was sufficient, considered as upon a demurrer, to sustain the verdict.

In obedience to the statute, the railway company stated the grounds upon which it demurred to the evidence. It embraces twenty-five specifications. To notice each of them specifically would be wearisome and unprofitable. In great part they are merely varying forms of the plea of not guilty. If there be no evidence to establish negligence upon the part of the railway company, then the judgment should have been in favor of the company, but in that inquiry we must be governed by the rule which our statute (section 3484) prescribes as to demurrers to evidence, which has been applied in cases so numerous and

varied as to render wholly unnecessary any effort to give it additional illustration.

It is contended that section 162 of the Virginia Constitution does not apply to this case, because Hoffman, at the time he sustained the injuries of which he complains, was not engaged in the physical construction, repair or maintenance of the company's roadway, track, or any of the structures connected therewith. The contention is that the work was one of demolition; but in this view we cannot concur. The pier was a part of the roadbed or track of the railroad. In the course of years the timber out of which it was constructed had decayed, and the pier or trestle had become unsafe. A large number of workmen were engaged in its restoration, and in the course of their duties it became necessary to remove rotten timber and to replace it with that which was sound—to demolish in order that they might rebuild. The ultimate object was the construction of a safe pier; a necessary incident was the removal or destruction of so much of it as had become unsafe. It would seem, therefore, that it was plainly within the terms of the Constitution.

But it is said that, if section 162 of the Virginia Constitution applies to the facts of this case, it contravenes the provisions of section 1 of the Fourteenth Amendment to the Constitution of the United States, which prohibits any State from denying to any person within its jurisdiction the equal protection of the laws.

It is conceded that the legislature may classify legislation, but that the classification must be upon a natural and reasonable basis.

Reliance is placed upon the opinion of the Supreme Court of the United States in the case of *Gulf & S. F. Ry. Co.* v. *Ellis,* 165 U. S. 155, 17 Sup. Ct. 255, 41 L. Ed. 666. In that case a State statute imposing an attorney's fee of $10 in addition to costs upon railway corporations omitting to pay certain claims within a certain time after presentation, applying to no other corporations or individuals, was held to be

unconstitutional as denying to railways the equal protection of the laws. Mr. Justice Brewer, in the course of his opinion, says, that "the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection.

In the case of *St. L. & San Francisco Ry. Co.* v. *Mathews,* 165 U. S. 1, 17 Sup. Ct. 243, 41 L. Ed. 611, a Wisconsin statute making every railroad corporation liable for all property injured or destroyed by fire from its locomotives, and giving the railroad company an insurable interest in the property for its protection, was held to be constitutional and valid. "Such statute," it is said, "neither violates any contract between the State and the railroad company, nor deprives the company of its property without due process of law, nor denies it the equal protection of the law." In this case, railroad companies were legislated against as a class, and were placed upon a different footing from other persons in the community, but the classification was held to be a reasonable and proper one, and not resting upon an arbitrary distinction.

In *Missouri Pacific Ry. Co.* v. *Mackey,* 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107, a law of Kansas making a railroad company liable to an employee for the negligence or mismanagement of other employees or agents of the same company, was held not in conflict with the Fourteenth Amendment, and that it did not deprive the company of its property without due process of law or deny to it the equal protection of the laws. The court said, that "legislation which is special in its character is not obnoxious to the last clause of the Fourteenth Amendment, if all persons subject to it are treated alike, under similar circumstances and conditions, in respect both to the privileges conferred and the liabilities imposed."

"The hazardous character of the business of operating a railway," said the court, "would seem to call for special legislation with respect to railroad corporations, having for its object the protection of their employees as well as the safety of the public. The business of other corporations is not subject to similar dangers to their employees, and no objections, therefore, can be made to the legislation on the ground of its making an unjust discrimination. It meets a particular necessity, and all railroad corporations are, without distinction, made subject to the same liabilities."

We think that the provision in our Constitution and the act of the legislature, putting it into operation, are not in conflict with the Constitution of the United States.

There is no doubt that it is true, as plaintiff in error maintains, that an employee owes to himself the duty of caution and care for his own protection. This court has in numerous cases enforced this principle.

As was said in *Darracott* v. *C. & O. Ry. Co.,* 83 Va. 294, 2 S. E. 511, 5 Am. St. Rep. 266, it is the duty of an employee to use ordinary care to avoid injury to himself, for the company is under no greater obligation to care for his safety than he is himself, and he must inform himself, so far as he reasonably can, respecting the dangers as well as the duties incident to the service. And, in general, any negligence of an employee amounting to the want of ordinary care, which is the proximate cause of the injury, will defeat an action against the company." See *Pittard's Admr.* v. *Southern Ry. Co.,* 107 Va. 1, 57 S. E. 561.

The doctrine is well stated in Labatt on Master and Servant, sec. 332, that "a servant is not in the exercise of ordinary care, unless, at each stage in the progress of his work, he makes an effective use of his bodily and mental faculties, and observes as attentively as is reasonably possible under the circumstances the condition of the instrumentalities by which his safety may be affected, and the results of their operation by himself or

others, in so far as that operation may tend to subject him to danger."

We concede that the doctrine which requires the master to furnish a safe place to the employee in which to do his work does not control in this case, where the servant was employed in repairing an unsafe structure. The very object of his employment was to render secure a structure which had become dangerous, and his employment involving as it did the tearing down, in part, of an existing structure caused continued changes in his environment, which demanded constant care and caution upon the part of the employee to avoid injury.

The evidence shows that the pier was extensive and complicated in its structure. A model was introduced during the course of the argument, which to the uninstructed presented only a wilderness of timbers, but which doubtless to the educated eye displayed an intelligent combination of correlated parts, mutually bracing and strengthening each other, so as to enable the completed structure to resist the strain and support the burden which was to be placed upon it. A number of men were employed, some below and some above. It was quite impossible for each one of those employees to be fully advised of what was done by his fellow-servant, or how the work of that fellow-servant, engaged in removing or replacing some one of the innumerable interdependent parts, might affect his own safety. It would have been a reasonable precaution, therefore, if the railway company, in order to safeguard its employees, had stationed some one whose duty it should be to overlook and direct the progress of the work, and to warn those engaged of impending danger.

We shall quote from the declaration a description of the situation at the moment of the accident: Constituting a part of the trestle on which defendant in error was engaged, there was a heavy piece of timber, twelve inches wide, twelve inches thick and twenty feet long, commonly called a cap-sill, resting upon and supported, in part, by four upright propping posts,

placed under the same and extending thence to the ground, commonly called plumb-posts, for a distance of thirty feet. The cap-sill, resting upon said plumb-posts, fitted in between two other posts, one at each end of the cap-sill, also called plumb-posts or end-uprights, and was fastened and affixed to said last mentioned plumb-posts or end-uprights by heavy strips of timber laid along both sides of said cap-sill, commonly called sash-braces, which in order to give reasonable necessary support to said cap-sill, of right should have been bolted or affixed to, on and along the sides of the said cap-sill, as well as to said last mentioned plumb-posts or end-uprights, but which the said defendant had negligently and carelessly left unbolted and insufficiently affixed to said cap-sill and extending across and beyond said last mentioned plumb-posts or end-uprights; that resting upon said cap-sill, at one end thereof, was a large, long and heavy piece of timber, twelve inches wide, four inches thick and thirty feet long, commonly called a purlin, which extended fifteen feet on each side of said cap-sill, which said purlin was supported at one end by a cap-sill similar to the one hereinbefore mentioned, or by some other means of support, and which said purlin, of right, at the other end should have been supported by being lashed up, or otherwise, but the defendant had negligently and carelessly left the said last mentioned end of the said purlin unsupported. That in repairing the trestle it became necessary, in consequence of its decayed condition, to remove and replace the first mentioned cap-sill, and the plaintiff was engaged in removing it; that the foreman or boss caused two of the first mentioned plumb-posts, by which in part said cap-sill was supported, to be removed and taken away, leaving only the two center plumb-posts remaining in position under the said cap-sill; that in order to remove said cap-sill it became necessary to disconnect it from the plumb-posts or end-uprights between which the said cap-sill fitted, to which it was fastened

or affixed by said sash-braces, and thereupon, in the discharge of his duty and in the usual and customary manner of disconnecting cap-sills from plumb-posts or end-uprights and in the plain view of the plaintiff, one of the other servants entered upon the work of disconnecting the said cap-sill from the said plumb-posts or end-uprights by sawing in two the said sash-braces at a point near to and outside of where the said purlin rested upon said cap-sill, and partly sawed in two the said sash-braces at the point above designated, and then called upon and requested the plaintiff, as he had a right to do, to complete the sawing in two of said sash-braces. Hoffman, at the request of his fellow-servant, took his place and commenced to complete the work upon which he was engaged. In the mean time, two of the plumb-posts which had supported the cap-sill upon which he was standing were removed, and when the sash-braces were severed, Hoffman's weight superadded to that of the sill itself was more than the timber in its decayed condition would bear, and he fell and received the injuries of which he complains.

In the course of Hoffman's evidence he was asked:

"Did you know the cap-sill was not supported at one end of it, as it has been testified it was not supported—I mean the purlin?

"A. No, sir, I did not notice the purlin at all, for the simple reason that this man, Mr. Harrell, had been working there a long time before I had, and had about twelve months' experience, and I thought he would do the work right before we got together on it.

"Q. Then Mr. Harrell was doing the work, and called on you before it was completed?

"A. He started to do the work. And another thing, they didn't notify me to take the plumb-post out. They never take them out to saw them off.

"Q. You didn't know the plumb-post had been taken out from underneath the cap-sill?

"A. No, sir, that is something that is never done until the sash-brace is cut loose."

We think that there was evidence sufficient to go to the jury and for them to say whether or not the railway company was guilty of negligence resulting in the injuries of which defendant in error sustained; and, if so, whether defendant in error, by his own negligence so far contributed to his injury as to bar his recovery. It was a case, about which, upon both propositions, reasonable men might well differ, and in such cases it is settled law that the jury must decide the controversy.

The judgment must be affirmed.

*Affirmed.*