# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## James C. Davis, Director General of Railroads of the United States, and Agent Under the Federal Transportation Act of 1920 (C. & O. Ry. Co.), v. J. W. Souder.

November 16, 1922.

1. Master and Servant—*Federal Employers' Liability Act—Action Based on Negligence.*—Under the Federal employers' liability act a recovery can be had only when the action is based on the negligence of the defendant.

2. Negligence—*Negligence when Alleged must be Proved.*—Generally negligence, when alleged, must be proved by direct or circumstantial evidence, and must not be left to conjecture or random guess. Negligence of the defendant will not be inferred from the mere fact that the injury occurred, or from the presumption of care on the part of the plaintiff.

3. Expert and Opinion Evidence—*Opinions of Nonexperts Inadmissible—Action for Injuries Caused by Fall from Wall—Case at Bar.*—In the instant case, an action under the Federal employers' liability act for injuries sustained from a fall from the retaining wall of a railway embankment, plaintiff, the only witness who testified as to conditions at the point where the accident occurred, gave the following opinions and conclusions of law which were improperly allowed to go to the jury over the objection of the defendant, namely: "The wall was supposed to be kept in a safe condition;" the place at which he got off "was a safe place;" he thought "there would have been no danger in getting off on the wall if there had not been rolling cinders there;" the wall "was not a proper place for cinders to be." Such opinions and conclusions cannot be accepted as evidence tending to prove negligence on the part of the defendant.

4. Expert and Opinion Evidence—*Opinion Evidence—What Precluded by General Rule.*—The general rule against opinion evidence precludes characterizing acts or conduct as careful, careless, cautious, dangerous, good management, in the line of duty, necessary, negligent, omitting anything possible, practicable, proper, prudent, reasonable, safe, skillful, usual or unusual.

5. Expert and Opinion Evidence—*Opinion Evidence—General Rule.*—No principle of law is better settled than that the opinions of witnesses

are in general inadmissible, that witnesses can testify to facts only and not to opinions or conclusions based on facts.

6. MASTER AND SERVANT—*Safe Place to Work—Changing Conditions—Repairs.*—An exception to the rule requiring the employer to make safe the place where his employees are at work is said to exist where the conditions of the place are constantly changing as the work progresses; and it is obvious that the rule can have only a modified application, if indeed any at all, where the employee is required to make the place safe, or is engaged in putting it in proper repair.

7. DEMURRER TO THE EVIDENCE—*Judicial Notice.*—On a demurrer to the evidence, the court is not obliged to accept as true that which it knows judicially to be untrue.

8. MASTER AND SERVANT—*Negligence of Master—Cinders on Retaining Wall of Railway Embankment—Case at Bar.*—In the instant case, an action under the Federal employers' liability act for injuries to a conductor of a work train occasioned by a fall from a retaining wall of an embankment, plaintiff alleged that the injury occurred because defendant in repairing a bridge carelessly and negligently caused the cinder ballast of the roadbed to be worked out on the wall at the bridge, upon which cinders plaintiff slipped.

   *Held:* That it was immaterial whether the cinder on the wall worked out from the ballast, or fell from a passing train, or from a hoisting engine, or from the engine of the work train.

9. MASTER AND SERVANT—*Negligence of Master—Cinders on Retaining Wall of Railway Embankment—Case at Bar.*—The instant case was an action under the Federal employers' liability act for injuries sustained by an employee occasioned by a fall from the retaining wall of an embankment. The wall was a part of the roadbed and not a walkway for defendant's employees, and a thin accumulation of cinders on the wall did not constitute negligence on the part of the defendant. It was not possible for the defendant to operate its trains without dropping some cinders on the wall, and the exercise of ordinary care did not require it to keep the wall free from cinders.

10. MASTER AND SERVANT—*Assumption of Risk—Cinders on Retaining Wall of Embankment.*—The instant case was an action under the Federal employers' liability act for injuries sustained by an employee occasioned by a fall from the retaining wall of an embankment. Plaintiff claimed that he slipped on some cinders on the wall. Plaintiff was an old railroad employee and he knew that the movement of trains over a railroad track would cause the ballast to work out from under the ties to some extent, and that railroad locomotives emitted sparks and cinders, and plaintiff admitted that he had seen the thin coat of cinders on the retaining wall before the date of the accident.

    *Held:* As a matter of law, that while assumption of risk is generally a question for the jury, yet, there being no conflict in the evidence, and the defendant not being guilty of any negligence, the injuries

> complained of resulted from risks, naturally incident to the plaintiff's employment, and which were assumed by him.

Error to a judgment of the Circuit Court of Albemarle county in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*David H.* and *Walter Leake*, for the plaintiff in error

*Timberlake & Nelson* and *Curry & Curry*, for the defendant in error.

WEST, J., delivered the opinion of the court.

This action, to recover damages for personal injuries sustained by the plaintiff while engaged in the service of the defendant in interstate commerce, was brought under the Federal employers' liability act of April 22, 1908, as amended (U. S. Comp. St. §§ 8657-8665). The case made out is under the fourth count of the amended declaration.

The defendant demurred to the plaintiff's evidence, and there was a verdict for the plaintiff for the sum of $31,000, subject to the court's decision on the demurrer. The demurrer was overruled, and judgment entered upon the verdict, which judgment we are asked to review.

The defendant relies upon nine assignments of error, but in our view of the case it will be *necessary* to consider only three questions—(1) The admission of certain evidence, (2) the negligence of the defendant, and (3) the assumption of the risk by the plaintiff.

At the time he was injured, Souder was the conductor

in charge of a work train, or material train, operating on the main line of the Chesapeake and Ohio Railway, and being used in connection with the erection of a new bridge over the Rivanna river about one mile east of Charlottesville. The bridge force of the defendant was engaged in the work, and at the time of the plaintiff's injury a part of the old bridge was in use, as well as a part of the new. The train consisted of an engine and two flat cars. The flat car next to the engine had some ropes and appliances on it used by the bridge workmen, and the other one, from which the plaintiff alighted, had a hoisting engine, or derrick, on it and other appliances such as pulleys called "nigger heads." It also had boards along the side of the car, which the men put there to protect themselves from falling off while at work. The rear car also had at each end handholds, or railings, and steps to aid employees in alighting from the car, which were, as the plaintiff expressed it, "provided for that business." The train was used to aid in the construction of the bridge, to carry material, to load and unload heavy objects, or to do anything the bridge force required to be done. The train crew consisted of the plaintiff, engineer, fireman and two brakemen. The train, headed west, was standing on the main line with the engine and one car on the bridge and the rear car on the approach to the bridge—that is to say, on the fill between the two concrete retaining walls which ran back from the ends of the concrete abutment for several feet to support the embankment. These walls were eighteen to twenty inches wide and about twenty feet above the level of the river below. The tops of the walls were level with and a part of the roadbed. Being on the main line, the train had to be protected by flagmen. The plaintiff had sent his front brakeman to flag on the west and his rear brakeman to flag on the east, and he was left

alone on the rear car. It was near the noon hour and trains were expected from the east and west. The road was ballasted at that place with cinders, and some of the cinders, it is alleged in the declaration, worked out from the ballast and spread along and on the top of the retaining wall on the north side of the track—not very many, as they were such that "you could see through them." The plaintiff, expecting a train from the east, called his flagmen in so as to clear the track by taking his train to Charlottesville. It being necessary before leaving to close the switch to a spur track located a short distance east of the bridge, the plaintiff left the car for that purpose, but instead of going to the end and getting down by means of the hand-holds and steps, went to the side of the car and swung himself down, over the boards placed there by the men as aforesaid, on top of the eighteen inch wall. As he stepped on the wall, he says, the cinders there rolled and caused his "feet to shoot out from under him," and he fell over twenty feet to the bed of the river below and was seriously injured, the result being the loss of his left leg at the hip.

The foregoing is the plaintiff's version of the accident, given at the trial. In his letter to the solicitor of the defendant, dated May 12, 1920, plaintiff says: "I stepped on the abutment stone of the Rivanna bridge, the stone being covered with green vines my foot slipped and I went down the precipice and struck a telegraph pole which broke the femur bone of my left leg."

[1] Under the employers' liability act, a recovery can be had only when the action is based on negligence. *Seaboard R. Co.* v. *Horton*, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915-C, 1, Ann. Cas. 1915-B, 475; *N. O. & N. E. R. Co.* v. *Harris*, 247 U. S. 367, 371, 38 Sup. Ct. 535, 62 L. Ed. 1006, 1 A. L. R. 1278.

[2] Negligence, when alleged, must be proven by direct or circumstantial evidence, and must not be left to conjecture or random guess.

In the case of *Patton* v. *Texas Pac. R. Co.*, 179 U. S. 663, 21 Sup. Ct. 277, 45 L. Ed. 361, the court said: "The fact of accident carries with it no presumption of negligence on the part of the employer; and it is an affirmative fact for the injured employee to establish that the employer has been guilty of negligence.   *   *   * It is not sufficient for the employee to show that the employer may have been guilty of negligence; the evidence must point to the fact that he was.   *   *   *   If the employee is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony."

In the case of *Looney* v. *Metropolitan R. Co.*, 200 U. S. 480, 26 Sup. Ct. 303, 50 L. Ed. 564, the law is stated thus: "In an action for damages for personal injuries *   * the plaintiff must establish the ground of the defendant's liability *   *.   Negligence of the defendant will not be inferred from the mere fact that the injury occurred, or from the presumption of care on the part of the plaintiff.   There is equally a presumption that the defendant performed his duty.

[3] The plaintiff, the only witness who testified as to conditions at the point where the accident occurred, gave certain opinions and conclusions of law which were improperly allowed to go to the jury over the objection of the defendant.   Among them may be mentioned the following: "The wall was supposed to be kept in a safe condition;" the place at which he got off "was a safe place;" he thought "there would have been no danger in getting off on the wall if there had not been rolling cinders there;" the wall "was not a proper place for cinders

to be." Such opinions and conclusions cannot be accepted as evidence tending to prove negligence on the part of the defendant.

[4, 5] In 22 Corpus Juris, page 514, we find this: "A mere supposition of a witness as to what would have happened if something had occurred which did not, or something had not occurred which did, or whether a certain thing could have happened under certain circumstances, which the witness says did not exist, will ordinarily be rejected as involving too large an element of conjecture." And at page 512 of the same work it is said: "The rule also precludes characterizing acts or conduct as careful, careless, cautious, dangerous, good management, in the line of duty, necessary, negligent, omitting anything possible, practicable, proper, prudent, reasonably safe, skillful, usual or unusual."

In *Virginia-Carolina Chemical Co. v. Knight*, 106 Va. 674, 56 S. E. 725, it is said: " 'No principle of law is better settled,' as was said in the case of *Southern Ry. Co.* v. *Mauzy*, 98 Va. 692, 694, 37 S. E. 285, 286, 'than that the opinions of witnesses are in general inadmissible, that witnesses can testify to facts only and not to opinions or conclusions based on facts.' "

In *Norfolk, etc., R. Co.* v. *Suffolk Lumber Co.*, 92 Va. 413, 23 S. E. 737, a witness was asked the following question: "Mr. Cannon, if there had been any signal post with signal and a watchman, as the contract requires, could there have been any accident on that occasion?" to which the witness replied: "I think not." The court held that the admission of this question and answer was error.

The declaration charges that the defendant in the work of repairing the bridge, carelessly and negligently caused the cinder ballast of the roadbed to be worked out on the wall at said bridge on the east side of the river

and on the north side of the railroad track, and also alleges that the plaintiff was operating the train to aid in repairing and improving the bridge and abutment of the said bridge across the Rivanna river. The evidence fails to disclose just how the cinders got on the wall. If the plaintiff's contention be true, it follows that he was engaged in work of such a character that the conditions of the place of work were constantly changing, and that the company was not required under such circumstances to make such place safe.

In discussing the duty of the master to provide a safe place, in 26 Cyc. 1148, the author says: "The rule as to the duty of the master with regard to the place of work, machinery and appliances, does not apply in cases in which the work the servant is engaged upon consists in making repairs."

[6] In 18 R. C. L., page 595, this is said: "An exception to the rule requiring the employer to make safe the place where his employees are at work is said to exist where the conditions of the place are constantly changing as the work progresses; and it is obvious that the rule can have only a modified application, if indeed any at all, where the employee is required to make the place safe, or is engaged in putting it in proper repair."

In *Jacoby Co.* v. *Williams*, 110 Va. 55, 65 S. E. 491, this court held that the general rule that a master must use ordinary care to provide his servant a reasonably safe place in which to work does not apply to a place which is constantly changing by reason of work being done.

[7] On a demurrer to the evidence, the court is not obliged to accept as true that which it knows judicially to be untrue.

[8, 9] It is immaterial whether the cinders on the wall worked out from the ballast—which the plaintiff has

failed to prove—or fell from passing trains, or from the hoisting engine, or the engine of the work train. In neither event would a thin accumulation of cinders on the wall constitute negligence on the part of the defendant. The defendant had the right to cover its entire roadbed, including the retaining walls, with cinders, if deemed proper so to do. The wall was a part of the roadbed and not a walkway for its employees, as contended by the plaintiff's counsel. It was impossible for the defendant to operate the company's trains at or by this point without dropping some cinders on that wall, and the exercise of ordinary care for the safety of his employees did not require the defendant to keep the wall free from cinders any more than any other portion of the right of way between stations.

The record fails to disclose any evidence which shows that the defendant was guilty of negligence which proximately contributed to the injury compalined of.

[10] One of the grounds of the demurrer to the evidence, assigned by the defendant, is that the plaintiff assumed the risk of the injuries complained of. The plaintiff contends that a servant does not assume the risk of the master's negligence, but only assumes the risks naturally incident to the employment.

It plainly appears that the plaintiff has been in the railroad service for twenty years, and has served as train conductor for many years. He knew that the defendant's railway tracks was ballasted in some places with cinders, that the movement of trains over a railroad track would cause any ballast to work out from under the ties, to some extent; and that all railroad locomotives fired with coal would emit sparks and cinders, some of which would fall on the roadbed, and admits seeing the thin coat of cinders on the retaining wall before the date of the accident. While assumption of risk

is generally a question for the jury, yet, there being no conflict in the evidence, and the defendant not being guilty of any negligence, as aforesaid, we have no difficulty in holding, as a matter of law, that the injuries complained of resulted from risks, naturally incident to the plaintiff's employment, which were assumed by him.

There is no evidence upon which the jury could properly find a verdict for the plaintiff.

The judgment complained of is erroneous and will be set aside and a final judgment entered here for the defendant.

*Reversed.*