# Richmond.

## HARRY CARLTON ROBERTS v. SOUTHERN RAILWAY COMPANY.

September 27, 1928.

Holt, J., having taken his seat on the Supreme Court of Appeals did not sit on the petition for rehearing in this case.

816

818

The opinion states the case

*Barksdale & Abbot*, for the plaintiff in error.

*Harris, Harvey & Brown* and *Thos. B. Gay*, for the defendant in error.

CHRISTIAN, J., delivered the opinion of the court.

This was an action by Harry Carlton Roberts against the Southern Railway Company for injuries sustained by him in the falling of a highway bridge. There was a verdict by the jury for ten thousand dollars ($10,000.00) in favor of the plaintiff against the defendant, which upon the motion that the verdict was contrary to

the law and the evidence and without evidence to support it, was set aside by the court, and judgment entered for the defendant. To this action of the court the plaintiff excepted, and for alleged error in this ruling as well as error in the refusal to give his instruction "No. 1," and giving instruction "B" for the defendant, this writ of error was awarded.

On December 4, 1925, Roberts, who was employed by the defendant as a second-grade bridge worker was engaged along with a gang of workmen under a foreman in the renewal or replacement of a wooden highway bridge which spanned the double tracks of the main line of the Southern Railway Company near Blair, in Pittsylvania county, Virginia. While the plaintiff was on the bridge setting a jack, as he had been directed to do by the foreman, the bridge collapsed and plaintiff fell with it to the tracks beneath, and in the fall his right foot was crushed and two segments of his spinal column were fractured, which injuries resulted in total disability as late as the date of the trial in November 1926, and partial permanent disability.

This bridge was erected in 1915, when the railway was doubled tracked at this point. The bridge was composed of five sections; from the east and west sides of the track the stringers and joints ran to two bents, located in the cut on the sides of the tracks; these bents were composed of heavy timbers in an upright position, placed upon a concrete base, and fastened together by a cap on top; the flooring upon these stringers and joist, resting on these bents, constituted the east and west sections of the bridge. The span over the tracks between these bents is fifty feet wide and the stringers are not sufficiently strong to carry their own weight without another bent between the tracks, which is undesirable if not unsafe and

dangerous from an operating standpoint. In order to do away with this middle bent, the strain and load is carried by two trusses on each side of the bridge. This kind of bridge is in common use for highway bridges crossing railroads and are known as queen post bridges. The engineer or designer of such bridge before the construction thereof figures out the strain and load upon the bridge; the necessary size and carrying capacity of the timbers, rods, bolts and various members of the trusses when properly placed and joined together. When originally erected this middle bent is necessary until the stringer or bottom chord, the top chord, the inclined post or members of the trusses forming the arch on each side, the steel rods that run through the iron cap at the joint formed by the top chord and the inclined members and stringer, and the two needle beams underneath the stringer, are properly placed and joined together with bolts through the end of the inclined members and stringers at their seats upon the stringers. These various members are correlated and when properly placed and tied together and set the truss frame will carry the load and the temporary bent may be removed. It will be observed that the building, maintenance and renewal of such a bridge is a scientific problem only to be undertaken and performed under the supervision and direction of experts.

This bridge had been properly planned and constructed. Each stringer or bottom chord which rested on the cap of the bents, consisted of five parallel lines of 2" x 12" timbers, bolted together to form one member, 10" x 12", 50 feet long. Underneath these bottom chords were two needle beams, and these beams and the bottom chords were each connected with the top chord of the trusses by steel rods with iron caps on

top thereof to support them. Two inclined end posts were fastened to the top chord and extended to the end of the stringer at the bent, thus forming an arch between the top chord and the bent. The inclined end posts from the top chord were fitted into recesses or seats cut into the bottom chord, where they were held in place in the bottom chord by bolts passing through both members. The integrity of the truss was dependent in the main upon the end posts and the bottom chord being securely fastened together at these seats. As the weight was downward, the truss was held in an upright position by braces from the end of the needle beam to the top chord of the truss.

Sometime in the fall of 1925, it became necessary for this bridge to be repaired; presumably after inspection, the railway company decided to renew the bridge by placing larger timbers therein. The method determined upon was to renew the truss timbers without supports under this middle span, and evidently in such manner as would prevent the bridge from falling while the work was in progress. The bridge supervisor probably gave C. E. Hall, the foreman of the bridge force of which Roberts was a member, instructions as to the method and character of the renewals of timbers and trusses of the bridge. What those instructions were does not appear from the evidence, except Hall stated that he was instructed to lighten the load upon the bridge, but it having rained before the work began, instead of closing it to traffic, and compelling the public to use the dirt road at the end of the cut, he replaced the old flooring with fifteen or twenty new boards, and proceeded to put the new and larger timbers in the trusses. The bridge force had renewed the truss on the Danville side of the bridge, but while doing so, the members opened some at the joints, and it became

necessary to brace with timbers the inclined member of the truss to the bottom chord.

After this truss was renewed; on the 5th day of December, 1925, the bridge force was renewing the truss on the Lynchburg side of the bridge. Part of the force were working on the east end of the truss putting in new bolts through the inclined member and the new bottom chord and removing the old one; two other workmen were engaged in similar work on the west end, while Roberts was on the northwest needle beam jacking in the bottom chord or stringer, when the bridge collapsed and fell upon the railroad tracks, carrying Roberts with it, and inflicting upon him the injuries complained of.

Roberts brought his action of trespass on the case in the Circuit Court of Pittsylvania county, against the Southern Railway Company, in August, 1926. His declaration alleged that it was the duty of said railway company to use reasonable and proper care to provide for said plaintiff a reasonably safe place in which to work, and not subject him to any extraordinary risk or hazard in the course of his duty or employment. There are six counts in the declaration, which charge only three separate acts of negligence upon the part of the defendant. The first three counts were framed upon the theory that Roberts at the time of his injury was engaged in intrastate commerce, and sections 5791 and 5793 of the Code of Virginia fixed the duties of defendant to him, while the last three counts charged that the duty of the defendant was fixed by the common law.

Besides the general charge of failure upon the part of the defendant employer to exercise ordinary care, the three distinct allegations of its breaches of duty are, to-wit: (a) Its negligence in not lightening the superstructure by removing the floor; (b) its negligence in

removing the bolts which fastened the truss-arm to the bottom chord without fastening them in some other way, and (c) the failure of the defendant in not placing a bent or false work beneath the bridge to support it while it was being renewed.

On the trial the plaintiff produced before the jury as part of his evidence a model of the bridge structure or interdependent parts of the same that carried the strain and load, except the flooring and joist which added nothing to its strength, but was a considerable burden upon the trusses and other carrying parts of the bridge. While under the circumstances of this case the problem for the supervisor or expert was to renew the timber of the bridge without its falling, so far as the record goes no provision was made nor consideration given to prevent practically the only danger incident to the work.

The evidence was conflicting on all the specific allegations of omission on the part of the defendant, as to the failure to lighten the load upon the structure before renewing the timbers. DeMott, the plaintiff's expert, and Kessee, an experienced bridge builder, but father-in-law of the plaintiff, testified that ordinary care required the defendant to lighten the weight on the structure by removing the flooring before removing the timbers in the trusses. Hall, the bridge foreman, admitted that the supervisor had instructed him to lighten the weight upon the bridge before proceeding with the work, but it had rained and the detour road at the end of cut was muddy, so he replaced some fifteen or twenty floor boards, and proceeded with the work without in any way lightening the strain. He and the other workmen did not think it necessary to lighten the load, and it was customary to do the work as he did it.

Garrison, the bridge supervisor for the Chesapeake and Ohio Railway Company, and Guill, the bridge supervisor of the Norfolk and Western Railway Company, after having the original blue print of the bridge and timbers composing it exhibited to them, and examining same, both testified that it was not necessary to lighten the load upon the trusses before renewing them, and it was the general custom of their companies not to do so. These experts knew nothing of the condition of the timbers or bolts at the time the bridge collapsed.

The second ground of negligence charged in the declaration was the failure to brace the inclined post and stringer at the west end joint before withdrawing the bolt that held them together. Roberts testified that this bolt had been entirely withdrawn and Kessee, who examined this joint after the bridge collapsed, said it was partially withdrawn. The workmen engaged at that point of the structure stated that this bolt had not been removed; that they had sent for the claw-bar to remove it, but before it was touched the bridge collapsed in the middle, and fell to the tracks.

The third ground of negligence was the failure of defendant to erect supports or a bent between the tracks to carry this span while renewing the timbers. Kessee expressed the opinion that ordinary care required this to be done, and DeMott testified that it would have made the operation safer and was practical if the trains slowed down. While the defendant's workmen testified that it was unnecessary and dangerous as the double tracks at that point were on a curve. The bridge supervisors introduced as experts thought it imprudent, and stated it was not customary and according to the general practice of railroads in such cases.

The defendant offered no evidence to show the cause of the collapse of the bridge. Nor did it introduce the bridge supervisor who inspected the bridge, and planned its renewal; or prove that in the method of renewal any consideration was given to prevent its falling or for the safety of the workmen engaged thereon.

After the evidence was adduced for the plaintiff and defendant, both parties tendered instructions. The plaintiff asked for four instructions to which there was no objection and the court gave all but instruction number one which it rejected, and the plaintiff excepted. This instruction submitted to the jury the question of whether the plaintiff was engaged in intrastate commerce as provided in section 5791 of the Code of Virginia, and if so he did not assume the risk of the defective and unsafe character of the bridge (section 5793).

Section 5793 was intended to conform the law of assumption of risk in intrastate commerce to the rule applied by the Federal decisions to the similar statute applicable to interstate commerce. "As used in these statutes, however, the language means, as has been so clearly pointed out by the Supreme Court of the United States, *that there must be some direct connection with transportation in commerce.*" *Chesapeake and Ohio Ry. Co.* v. *Mizelle*, 136 Va. 237, 249, 118 S. E. 241, 244; *Shanks* v. *Del. L & W. R. Co.*, 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797.

Roberts was engaged in repairing a county highway bridge that crossed the right-of-way and tracks of the railway company and which it was compelled to repair. This bridge had never been used and was not intended for use in either interstate or intrastate commerce. The only connection its renewal had with commerce was that the work had to be done by the railway

company by its own bridge force, or by contract, and paid for out of its treasury. It follows this instruction was not applicable to this case, and the court rightly rejected it.

The defendant asked for three instructions and the court gave all three. The plaintiff objected only to instruction "B" and his objection being overruled, he excepted to its being given, but the record does not state any ground of objection made to the trial court, therefore under Rule of Court XXII, we cannot consider any objection, except to enable the court to attain the ends of justice.

After the jury had been instructed, and the case fully argued, the jury retired to their room and after some time returned into court with a verdict in favor of the plaintiff and assessed his damages at ten thousand dollars ($10,000.00). Thereupon the defendant moved the court to set aside the verdict of the jury, because without evidence to support it, and enter judgment for the defendant pursuant to section 6251 of the Code of Virginia. The court granted the defendant's motion, set aside the verdict of the jury and entered final judgment for it. To which action the plaintiff excepted, and this writ of error presents for decision as the main question in the case, whether there was sufficient evidence to sustain the verdict of the jury. We have set forth in detail the circumstances and evidence in the case in order to arrive at a just conclusion.

Counsel for the defendant claims that it was not the duty of the railway company to use reasonable and ordinary care to provide for said plaintiff a reasonably safe place to work, and not subject him to any extraordinary risk or hazard in the course of his duty or employment. This legal duty arises from the nature of the structure, and character of the work to be done,

together with its manner of performance. When the facts and circumstances are revealed by the evidence and are undisputed, whether the law imposes this duty upon the master is for the determination of the court.

In this case the declaration in each count alleged this duty. There was no demurrer to the declaration. After the evidence had been adduced, the learned judge of the trial court in the instructions of both plaintiff and defendant, which dealt with this duty, both directly and inferentially, told the jury without objection from either party, that as a matter of law, it was the duty of the defendant to use reasonable and ordinary care to provide for said plaintiff a reasonably safe place in which to work.

The defendant further contends that it did not owe the duty of reasonable and ordinary care to the plaintiff because he assumed the risk of employment. That he was employed to repair an unsafe bridge; that the character of the place for safety was constantly changing as the work progressed, and that he was engaged to make the bridge safe that had become unsafe. Citing numerous cases as authority to sustain its position, among others *Chesapeake and Ohio Railway Company* v. *Hoffman*, 109 Va. 44, 63 S. E. 432; *Davis* v. *Souder*, 134 Va. 356, 362, 114 S. E. 605.

The rule of law set forth therein is well established. But it is not applicable to this case. The conditions of this bridge were not constantly changing as the work progressed. The plan for its renewal was to replace the timbers without rendering the bridge unsafe. The whole trend of the defendant's evidence was that the method of renewal was customarily and reasonably safe—and to such extent was this carried, that the bridge was left open for traffic.

The defendant also contends here as it did in the trial court that the risks incident to the renewal of this bridge were open and obvious to Roberts, or that he had, or should have had, knowledge thereof, therefore he assumed the risks of said service. The trial court properly instructed the jury upon this issue, and it was determined in favor of the plaintiff. The question of the assumption of risk is usually one for the jury unless "the evidence discloses facts upon which reasonable minds are not likely to differ." *Davis* v. *Powell*, 142 Va. 711, 125 S. E. 751, 128 S. E. 242.

The position of the defendant here is, that the negligence of the defendant was open and obvious, and the jury was not justified in its finding. The model introduced in the evidence presented to the uninstructed many timbers, but to the educated eye displayed an intelligent combination of correlated parts mutually bracing and strengthening each other, so as to enable the completed structure to resist the strain and support the burden which was placed upon it. Several men were employed at each end of the truss, and on the needle beam. It was quite impossible for each one of those employees to be fully advised of what was done by his fellow servant or how the work of that fellow servant engaged in removing or replacing some one of the interdependent parts might affect his own safety. Hence the jury was fully warranted by the evidence in finding that the risks of the servant were not open or obvious or that the plaintiff had knowledge thereof. *Chesapeake and Ohio Railway Company* v. *Hoffman, supra,* page 71 (63 S. E. 432).

The gravamen of this action was the failure of the railway company to use ordinary care to provide for the plaintiff a reasonably safe place in which to work, and not to subject him to any extraordinary risk or

hazard in the course of his duty or employment. The negligence charged in the declaration are acts of omission, therefore the evidence has been set forth in more detail than usual in personal injury cases, and because the defendant's instruction A (to which there was no objection) told the jury that the mere fact of the injury did not entitle the plaintiff to recover, but he must affirmatively prove by a preponderance of the evidence, "that he was injured by some one or more of the acts of negligence charged in the declaration." This instruction did not necessarily exclude from the consideration of the jury all inference of negligence reasonably deducible from the character of the structure and all the circumstances of the accident appearing in the evidence, while its instruction "B" made the custom and usage of the business the standard of reasonable care, and proof of the renewal of the structure according to that standard conclusive.

It is true that negligence is never presumed from the mere fact of the accident in cases of this nature, yet an accident may occur under such circumstances and the structure be of such character, where the defendant owes the duty to the plaintiff to provide him a reasonably safe place to work, and not to subject him to any extraordinary risk or hazard in the course of his duty or employment, that the jury from all the evidence, direct and circumstantial, including the fact that the accident is such that in the ordinary course of the things it does not occur if those who have the control or management use proper care, may reasonably infer that the defendant's negligence was the cause of the accident.

The fifty foot span of the highway bridge across the tracks of the railway was carried from bent to bent by trusses, and the railway company undertook to repair

the span by substituting new and larger timbers for the old ones; the model exhibited in evidence showed this span consisted of numerous timbers, bolts and joints, placed in combination of correlated parts, mutually bracing and strengthening each other so as to enable the completed structure to resist strain and support the burden upon it. The safety of the structure depending as it did upon the condition of its members, and their inter-dependence was an engineering problem, and where it falls in process of renewal causing injury to one on it, it was the duty of the jury to consider these facts and circumstances along with the other evidence in determining whether the defendant exercised proper care. Especially where the plaintiff had introduced evidence to prove that the defendant did not lighten the load upon the structure, or place any supports under the same while being renewed, and the defendant failed to offer any evidence of the cause of its collapse, or what provision was made to prevent its collapse.

It was the duty of the jury to consider both the direct and circumstantial evidence and the just inferences arising therefrom, notwithstanding the defendant's instruction A apparently confined its consideration only to the direct testimony of the plaintiff. When the evidence is considered as a whole and the just inferences deducible therefrom, it cannot be said as a matter of law that the jury's verdict was without evidence to support it.

The defendant's main defense to this action was based upon the doctrine of the "unbending test" of negligence. Its instruction B told the jury that the test of reasonable or ordinary care in repairing the bridge is the general custom of the trade or business engaged in similar work under like circumstances as

those involved in this case. The plaintiff excepted to this instruction but assigned no grounds of objection. The learned judge of the trial court in setting aside the verdict of the jury and entering judgment for the defendant adhered to the rule that ordinary care is conclusively determined by the general usages of the business.

In the case of *Jeffress* v. *Virginia Railway and Power Company*, 127 Va. 694, 104 S. E. 393-400, Judge Kelly, discussing the so-called "unbending test" of negligence says:

"The case of *Bertha Zinc Co.* v. *Martin*, 93 Va. 791, 22 S. E. 869, 70 L. R. A. 999, undoubtedly held, as claimed by defendant, that ordinary care is to be determined by the general usages of the business, and that no man can be held to any higher degree of skill than the fair average of his profession, and the same is true of *Norfolk Traction Company* v. *Ellington*, 108 Va. 245, 61 S. E. 779, 17 L. R. A. (N. S.) 117; *Norfolk and Portsmouth Traction Company* v. *Daily*, 111 Va. 665, 69 S. E. 963; *Southern Railway Company* v. *Foster*, 111 Va. 763, 69 S. E. 972, and some more recent cases. We do not think, however, that any of those cases intended to hold that the so-called 'unbending test' of negligence could be invoked, even in a case between master and servant, to exempt a defendant from liability where he has used an appliance or method known, not to be reasonably adequate when one of the latter character was available. If they can be properly so construed, we are prepared to ingraft a qualification."

In the *Jeffress Case* Judge Kelly, after reviewing the Virginia cases and other authorities, says:

"It must be conceded that it is difficult to determine just how far the decisions in Virginia have intended to adopt custom and usage as the standard measure of

ordinary care; and the authorities generally are in hopeless conflict upon the subject with perhaps a majority supporting the view contended for by counsel for defendant in this case.''

This case then decides that the custom and usage of business or the ''unbending test'' of negligence is not conclusive, but ''the general usage of the business in a given situation is admissible as evidence of what is reasonable and proper to be done in that situation from which, along with the other (if there be other) pertinent facts and circumstances of the case, the jury are to determine the question of negligence. If there be no conflict of evidence as to the existence of the general usage, and nothing in the evidence tending to show, as to employees, that the usage was not reasonably safe and adequate for its purpose and occasion. * * * * * * *, then the usage itself is conclusive evidence of the exercise of ordinary care, and no verdict to the contrary should be upheld.''

Since the *Jeffress Case* the ''unbending test'' of negligence no longer prevails in Virginia. The correct rule of law supported by reason, and the minority of authorities, make a distinction between the use of facts as to custom and usage of others conducting a similar business and their use as involving a standard of conduct in substantive law. The standard demanded by the law is the ordinary care of prudent men engaged in the particular employment or business. ''The custom of others engaged in the same pursuit, though generally admissible as evidence by either party as tending to show negligence, or the contrary, is not conclusive What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not.'' 1 Shearman and Redfield on Negligence (6th ed.), section 12-a.

The question of negligence or due care is one peculiarly within the province of the jury, and where the general usage of the business in a given situation is introduced in evidence of what is reasonable and proper to be done in that situation; that fact must be considered along with the other pertinent facts and circumstances of the case by the jury in determining the question of negligence.

In the case at bar while evidence that the methods employed were the same adopted by others in similar business was proper evidence to go to the jury of what was reasonable and proper to be done in that situation, yet it was not conclusive. There were other pertinent facts and circumstances revealed by the evidence which should have been weighed along with the usage of the business by the jury, and from which reasonable minds might have concluded that the defendant had not exercised that reasonable prudence required by law under the circumstances of this case. Hence there was evidence to sustain the jury's verdict.

█ The jury upon the whole evidence in the case having found a verdict according to law—supported by the evidence—notwithstanding the erroneous instructions of the court; the verdict should not have been set aside, and this court will annul the judgment of the trial court, reinstate the verdict of the jury, and enter judgment thereon for the plaintiff.

*Reversed and final judgment entered.*

CRUMP, P. (concurring):
██ While the other members of the court concur in the result reached by Judge Christian, we think the law of the case may be more precisely stated. The plaintiff, engaged in work upon a bridge consisting of a

single span sustained and held in place by a truss without underneath supports, was unquestionably in a place of danger as the timbers were being taken out and renewed, and he assumed the ordinary risks attendant upon such an undertaking. The general doctrine of the law of master and servant that it is the duty of the master to furnish the servant with a safe place in which to work does not apply, or applies only in a modified form, to such cases as the instant case, in which the servant is engaged with others in making repairs to a large structure, such as a bridge, the condition of which is constantly changing as the work progresses, necessarily carrying with it a degree of peril for those engaged in the work. This rule is plainly announced and applied in *C. & O. Ry. Co.* v. *Hoffman,* 109 Va. 44, 63 S. E. 432, and *Davis* v. *Souder,* 134 Va. 356, 114 S. E. 605.

Likewise circumspection should be used in applying to a case such as this the general doctrine that the servant assumes the risks incident to his employment. In undertaking employment of this character the servant may be held to a knowledge that there are perils incident to the work rendering its performance hazardous; still the master is liable for an injury to the servant occurring by reason of the master's negligence, and which would not have occurred in the usual execution of the work with a reasonable degree of care.

In *Norfolk Southern R. R. Co.* v. *Lewis,* 149 Va. 318, 141 S. E. 229, the proper expression of the rule as to the assumption of risk is stated to be, that as the employee assumes all the ordinary risks incident to the employment, he assumes such extraordinary risks as are plain and obvious, yet he does not assume any risks arising from the master's negligence unless they are plain and obvious or he knows of them and appreciates them and continues in the service.

In *Froman* v. *C. & O. Ry. Co.*, 148 Va. 148, 138 S. E. 658, it is said:

"As a general rule a servant does not assume risks which may be obviated by the master by the exercise of reasonable care on his part. A failure on the part of the master to observe, for the protection of the servant, that reasonable degree of care which the circumstances of the particular case justly demand, is actionable negligence, and is not within the influence of the doctrine of assumed risks."

As a result of the authorities, it is clear that notwithstanding the fact that the ordinary principle requiring the master to provide for the servant a safe place does not apply here, and although the servant assumes the risks incident to a hazardous employment, yet the servant can recover if he is injured by a hazard not usually incident to the work and brought about by the negligence of the master.

In the instant case a duty rested upon the master to exercise reasonable care to see that the bridge did not fall and so injure the plaintiff, and a failure to exercise such care constituted negligence.

While the declaration in the case may be subject to some criticism in its phrasing of the legal duty resting upon the defendant, still it states a case coming within the elements of the law just stated.

It cannot be said in the instant case that the plaintiff knew of any risks incident to the employment arising from the employer's negligence and nevertheless entered upon and continued in the service, nor that dangers attended the work, arising from the master's negligence, which were plain and obvious.

Whether or not during the course of work the employer's foreman directed or allowed a negligent act, causing the collapse of the bridge, and the plaintiff at

the time became aware of the act and understood its import or the act and its danger was open and obvious, and so he either assumed the danger or contributed to the collapse and his consequent injury, were matters for the jury.

Among the instructions given the jury was the following:

"The court instructs the jury that if they believe from the evidence that H. C. Roberts was employed by the Southern Railway Company, and that while the said Roberts was attending to his accustomed duties using such care as a man of ordinary prudence would use under the circumstances, he was injured by the falling of the bridge upon which he was at work, and that the fall and collapse of said bridge was the result of defendant's negligence, and that said Roberts at the time of said fall or collapse neither knew, nor by the exercise of ordinary care on his part should have known, of the unsafe character of the bridge, then the jury should find for the plaintiff."

There was no objection to this instruction by the defendant, and while it might have been amplified and so made clearer, it was still sufficient to submit to the jury a case depending upon the principles of law which we have attempted to define briefly.

There was considerable conflict in the evidence. The defendant did not undertake to account for the collapse of the bridge. The plaintiff maintained that, while the force was engaged in renewing the truss on the Lynchburg side of the bridge, the bolts which fastened the inclined truss members or arms to the bottom chords or stringers, essential to the maintenance of the truss as the support of the bridge, were removed without connecting the truss otherwise or supporting the bridge, and this caused the collapse. The

fall of the bridge did occur about this time. Upon this and other points in the case, though the defense was stoutly maintained by evidence for the defendant, we are of opinion upon a review of the entire testimony that it was sufficiently in conflict to require a submission of the case to a jury, and justify a verdict for the plaintiff upon all the inferences the jury might draw from the evidence.

The case, in many of its aspects, is similar to the case of *C. & O. Ry. Co.* v. *Hoffman, supra*, and we hold, as held in that case, that the court should not interfere with a verdict for the plaintiff. Judgment therefore will be entered upon the verdict, here.

McLemore and Chinn, JJ., concur in result and agree with President Crump's statement.

### UPON PETITION FOR REHEARING.

October 13, 1928.

By the Court:

In the petition for rehearing, it is again urged upon the court by the defendant in error that the verdict of the jury was, upon either of two grounds, properly disregarded by the trial court. It is insisted that the unbending test of negligence so plainly applied to the facts of the case that a recovery by the plaintiff was justly denied; and that the risk of injury from the falling of the bridge was so open and obvious to the plaintiff that he should be held to have assumed the risk from the peril which caused his injury.

The rule as to the unbending test is variously phrased, but it may be said to be that the test of negligence in methods and in the character of the machinery and tools and apparatus used or furnished by the master is the general custom or ordinary usage in vogue among others engaged in the same business, so that

the standard of due care is the conduct as to these methods of the average prudent man in the business. The three most recent Virginia cases are *Jeffress* v. *Virginia Railway and Power Company*, 127 Va. 694, 104 S. E. 393; *Southern Railway Company* v. *Chadwick*, 144 Va. 443, 132 S. E. 191; and *Atlantic Coast Line Railroad Company* v. *Bell*, 149 Va. 720, 141 S. E. 838. From these cases and earlier cases on the subject it will be seen that the application of the rule to a given set of circumstances may be conclusive of the right of recovery, or it may not be. See also 45 Corpus Juris, 707-708. In the instant case there was uncontradicted evidence to the fact that the general plans and methods adopted, sketched or outlined by the engineers of the defendant for the repair of the bridge were those customary among bridge builders and bridge repairers. It may be that these general plans and directions were followed. However, in the instant case, there was a definite act done in carrying out the plans for repair, alleged to constitute negligence, notwithstanding the fact that the general method of repairing the bridge may have corresponded to the usual methods adopted by engineers and bridge repairers of skill. Still it can scarcely be said that it was usual, upon an exact adherence to the customary methods and plans, for the bridge, under such circumstances as those in the instant case, to be precipitated and fall. It is rather to be said that the bridge would not fall if the customary plans had been attentively carried out without neglect. This is not a case in which the application of the unbending test doctrine governs entirely, as is very frequently properly ruled under other circumstances. If an employer equips his factory in a manner similar to good factories of like character elsewhere and an accident occurs to a servant notwithstanding, it may be

said that the master has done all that is required of him. In the case here the question is, whether a negligent act was done by employees under the direction of a foreman which caused the bridge to fall. The instruction given by the court on the question of custom or usage was certainly as favorable, if not more so, to the position of the defendant as the defendant could expect.

The phase of assumption of risk presented in this case is that by which the employer is excused upon the ground that the servant assumed a risk which he knew of, or which was so plain and clear that he must have known of, and hence cannot recover for an injury resulting therefrom. In *Davis* v. *Ellis*, 146 Va. 366, 126 S. E. 658, 131 S. E. 815, the court says, quoting from Judge Cardwell in an earlier case: "The true rule of law deducible from the authorities is, that the servant assumes all the ordinary usual and normal risks of the business after the master has used reasonable care for his protection, also all such other risks as he knows of, or which were so unquestionably plain and clear that he must have known of their existence and their danger to him."

In *Looney* v. *Norfolk and Western Railway Company*, 102 W. Va. 40, 135 S. E. 262, 137 S. E. 756, 48 A. L. R. 806, the court says, upon a reference to a Virginia case in *Lynchburg Foundry Co.* v. *Dalton*, 121 Va. 480, 93 S. E. 587: "It is only where the danger is so open and obvious, and the opportunity or knowledge on the part of the employee is so complete as to leave no doubt that he knew, or should have known, all about it, that the question becomes one of law for the court."

In this aspect of the case the question is whether, judged by these standards, the plaintiff assumed the risk of the falling of the bridge from the withdrawing of the bolts from the truss arm. The

plaintiff does state that he knew these bolts were withdrawn and in his opinion they were all that was holding the bridge, but he further states that he did not realize or know the danger from the likelihood that such acts might cause the bridge to fall. Taking the evidence as a whole, we find ourselves not in agreement with the holding of the learned trial judge that the evidence so plainly showed that the danger was open and obvious to the plaintiff that he should be held to have assumed it and, therefore, he could not recover. The plaintiff was an ordinary workman of some experience, but not of any skill in working upon bridges, and our opinion is that the evidence was not sufficiently clear under the rulings applicable to a defense of this character, the burden of which is upon the defendant, to authorize a holding by the court that the jury should not pass upon the question. It is to be observed that if the knowledge that the bridge was going to fall should be imputed to the plaintiff as an open and obvious result of what was being done by the foreman or his agent directing the bolts to be withdrawn, then the knowledge of the foreman would be greater and it would seem reasonable to suppose that the bolts were withdrawn incautiously and without looking out for the proper support of the bridge. Whether or not additional bents would have prevented the fall and should have been used, was for the jury. The propriety of using or not using bents or other additional supports could not be governed by any custom, for custom cannot be used to excuse an act of negligence.

We have given the case careful consideration and while it is not a case in which the right of recovery is perfectly clear, yet the issue of negligence was submitted to the jury, and properly so, and under the principles governing such cases prevailing in Virginia,

neither the trial court nor this court should overrule the conclusion reached by the jury. We see no reason to alter the conclusion of the court that the jury was the proper tribunal to pass upon the issues in this case. The rehearing is, therefore, denied.

*Rehearing denied.*

## ON REHEARING.

CHRISTIAN, J., for himself:

I wrote the opinion in this case and want to express my reasons for denying a rehearing.

This was a suit for damages caused by the falling of a fifty foot span of a truss highway bridge crossing the tracks of the defendant.

It was the duty of the defendant to so plan the repair or renewal of said bridge as to reasonably provide for the safety of the employees working thereon and not expose them to greater dangers than are ordinarily incident to such work.

The plaintiff alleged three grounds wherein defendant failed in its duty which by law it owed him and which constituted negligence.

The defendant's defense was that it planned and renewed the bridge in the manner commonly adopted by railroads in such work and it proved that Norfolk and Western and Chesapeake and Ohio Railroads renewed such bridges without lightening the weight thereon or placing supports under same to prevent its falling. This is known as the "unbending test" of negligence.

Since the decision in the *Jeffress Case*, the "unbending test" rule is not a rule of substantive law in Virginia, but a rule of evidence, that is, that the methods pursued by others in similar work is evidence that the defendant exercised reasonable care in renewing the

bridge, but this is not conclusive, if there is evidence before the jury that the methods adopted and pursued were not reasonably safe. That is, that the usual methods of others and what was done in the particular case are facts for the jury to decide whether the defendant exercised such reasonable care as prudent men would have exercised under similar circumstances.

In the instant case the defendant did not furnish any evidence of what the plans for renewing this bridge were, except that its bridge expert told the foreman to lighten the load upon the bridge before beginning to renew the same. Nor does it appear whether the parts of the bridge were of such strength and soundness as would warrant the renewal thereof without lightening the load or placing bents under the same. This was a problem for an expert, and when the plaintiff proved that the load was not lightened upon the bridge nor bents placed under the same, the jury, with the model of the bridge before them and the fact that no measures were taken to prevent its falling, coupled with the fact that it fell, made such conflict of evidence before them that sustains their verdict and finding that the defendant had not used reasonable care.

The plaintiff not being an expert did not know and could not know what precautions were necessary to prevent the bridge from falling and did not therefore assume the risk.

The cases cited by counsel for defendant related to repairs of structures that any ordinary workmen might see and know the dangers incident to the work and, therefore, might be said to have assumed the risk of his employment. Where the "unbending test" of negligence is held to be substantive law, the workman is conclusively presumed to have assumed the risk of the employment and, therefore, cannot recover.

Hence the "unbending test" rule defeats the recovery because of this assumption of risk, and he is not permitted to prove any negligence to the contrary.

Rule 22 has no application to this case, because the jury found in favor of the plaintiff, notwithstanding the erroneous instruction, and the court set aside the verdict because contrary to the law and the evidence, which was error on the part of the court as the jury found according to the law and evidence.

The petition for rehearing is denied.