Lawrence F. LAPPE, Appellee,

v.

Robert H. BLOCKER, Executor of the Estate of Arthur J. Blocker, Deceased, Appellant,

and

Milo Johnson, d/b/a Murray Elevator, Appellee.

No. 2–56573.

Supreme Court of Iowa.

July 31, 1974.

Winkel, Nitchals & Winkel, Algona, for appellant.

Linnan, Lynch & Peterson, Algona, for appellees.

Heard before MOORE, C. J., and MASON, RAWLINGS, REES, and UHLENHOPP, JJ.

UHLENHOPP, Justice.

This appeal involves the propriety of the trial court's order for a new trial following a jury verdict awarding death damages in a motor vehicle collision case.

South of Bancroft, Iowa, paved United States Highway 169 runs north and south. A county road intersects the highway at right angles. The traveled portion of the county road widens to 133 feet where it joins the highway. Signs on the county road direct traffic to stop before entering the intersection.

During daylight on June 9, 1970, two trucks were proceeding north on Highway 169. Arthur J. Blocker, a retired farmer aged 65, had stopped his car headed north at the side of Highway 169 some distance south of the intersection in question. The driver of the second truck testified that

after the first truck passed the stopped Blocker car, Blocker hurriedly drove out onto the pavement and proceeded north between the two trucks. Soon afterward Blocker passed the lead truck, not far from the intersection with the county road. According to the driver of the second truck, Blocker was then traveling 60 to 65 miles per hour. The speed limit in that area was 70 miles per hour. Blocker then proceeded north on his right side of the highway toward the intersection.

At this time, Lawrence F. Lappe, driving Milo Johnson's truck in the course of his employment for Johnson, drove the truck east on the county road toward the intersection. Lappe testified at trial that he stopped at the stop sign, looked south and saw a truck coming at some distance, thought he had time to enter Highway 169, and started to do so, turning north. As he traversed the intersection, he saw the Blocker car pass the truck.

Blocker ran into the rear of the truck and died as a result. Lappe was injured, and the two vehicles were badly damaged. The collision occurred on the east side of Highway 169 about 38 feet north of the center of the intersection. The two vehicles ended up quite close together on the east side of the highway, with the rear of the car about 82 feet north of the point of collision.

Also at this time, two men were repairing the county road. They had placed a sign on Highway 169 south of the intersection, indicating construction work ahead. One of the men, who was just off the east side of Highway 169 sawing the cement north and south across the county road, did not see the two vehicles before the collision. The other man, who was farther south on Highway 169 and off of the traveled portion, had a red flag to warn traffic of the work at the intersection. He testified that he saw Blocker go around the lead truck south of the intersection and proceed north and that Blocker was going at least 100 miles per hour. He also testified that Blocker's speed frightened him

causing him to run down into the ditch. His testimony was weakened however by a statement he made on a dictabelt to an insurance adjuster soon after the collision and also by a statement he made to a highway patrolman.

At trial Blocker's executor introduced evidence that under the circumstances which existed, Blocker would generate a speed of 60 to 65 miles per hour with full. acceleration. The executor also introduced the opinion of an accident reconstruction expert, who had impressive credentials and experience, that Blocker's speed at impact was 50 to 55 miles per hour. This opinion was in answer to a hypothetical question based on matters in evidence. The parties also introduced considerable circumstantial evidence relating to Blocker's speed.

Lappe and Johnson sought damages of Blocker's executor, who countered by seeking damages of Lappe and Johnson. The parties tried the case to a jury. At the conclusion of the evidence, Lappe and Johnson moved for a directed verdict against the claim of Blocker's executor. The trial court overruled the motion. The jury found for Blocker's executor and awarded him $45,000 from Lappe and Johnson. Lappe and Johnson moved for a new trial, which the trial court granted. Blocker's executor then appealed, and Lappe and Johnson cross-appealed.

In order to understand the case as fully as possible, we have gone beyond the appendix and briefs and have examined all the evidence, the exhibits, and the district court documents. In its order for a new trial, the trial court pointed out that at the conclusion of the trial the jury retired from the courtroom at 1:10 p. m., lunched approximately an hour, returned its verdict at 3:20 p. m., and therefore deliberated for about an hour; that the instructions were necessarily somewhat lengthy and took the court about an hour to read to the jury; that the testimony of the accident-reconstruction expert was technical and would. take time for consideration; that the court

had previously had experience with expert witnesses reaching opposite conclusions on a single state of facts, indicating the necessity of this jury's reading the instructions on expert witnesses; that when a jury fails to respond truly to the real merits of the controversy, it fails to do its duty, and when a trial court feels that a verdict fails to administer substantial justice or does not effect justice, it should grant a new trial; that a trial court is more than a mere moderator and when convinced justice has not been done should grant a new trial; and that the court was of opinion "that the verdict does not effect justice, and that the jury has not done its duty in failing to understand and follow the instructions, or to give some instructions due consideration, and that a new trial should be granted."

We find nothing wrong with most of the principles stated by the trial court, but we have difficulty with the court's application of them to the case. The parties present numerous arguments, but we think three issues control. The first issue is a basic one —the propriety of the grant of a new trial when the trial judge would have decided the facts the other way but the jury has substantial evidentiary support for its verdict. The second issue relates to the amount of time the jury deliberated. The final issue is whether Lappe and Johnson were entitled to a directed verdict on the executor's claim on the ground that Blocker was contributorily negligent as a matter of law.

■ I. *Divergent Judge-Jury Views on Proper Result.* Lappe and Johnson are right that a trial court has broad but not unlimited discretion to determine whether a verdict effects substantial justice between the parties and that we are slower to interfere with a trial court's grant of a new trial than with its denial of one. Rule 344(f)(3) and (4), Rules of Civil Procedure; Hartford Fire Ins. Co. v. Lefler, 257 Iowa 796, 801, 135 N.W.2d 88, 91 ("Whenever it appears that the jury has, from any cause, failed to respond truly to

the real merits of a controversy, it has failed to do its duty, and when the superior and more comprehensive judgment of the trial court dictates the jury verdict failed to administer substantial justice to the parties in the case, a new trial should be granted."); Coulthard v. Keenan, 256 Iowa 890, 898, 129 N.W.2d 597, 602 ("It is not necessary that reversible error was committed upon the trial in order for the court to grant a second trial in the interest of justice. If such were the rule, the inherent power of the court to correct a failure of justice would be meaningless."); Comer v. Burns, 255 Iowa 251, 122 N.W.2d 305; Coleman v. Brower Constr. Co., 254 Iowa 724, 119 N.W.2d 256.

Close examination of the later cases, however, reveals that a good reason generally appears in the record for granting a new trial (although that reason might not rise to the level of reversible error)—such as misconduct in argument, irrelevant evidence, size of verdict, or a problem in the instructions. This court has said, "In ruling upon a motion for a new trial, broad but not unlimited discretion is vested in the trial court and we are slower to interfere with the grant of that relief than with its denial. . . . *However the discretion so accorded must have some support in the record.*" Fetters v. City of Des Moines, 260 Iowa 490, 500, 149 N.W.2d 815, 821 (italics added). See also Smith v. Ullerich, 259 Iowa 797, 145 N.W.2d 1. On this basis we reversed a new trial grant in Riley v. Wilson Concrete Co., 184 N.W.2d 689 (Iowa).

In another reversal of a new-trial grant, we said:

A trial court has wide discretion in the matter of granting or denying a motion for new trial. It is a legal discretion, exercisable for sound judicial reasons. Verdicts should not be set aside lightly and the court, in granting a new trial, must be sure there exists sufficient cause to support the exercise of such discretion. A litigant is entitled to a fair trial,

but only one. Jones v. Iowa State Highway Comm'n, 185 N.W.2d 746, 749 (Iowa).

With particular reference to new-trial grants based on divergent judge-jury views of the facts, this court said the following in Lantz v. Cook, 256 Iowa 409, 413, 127 N.W.2d 675, 677:

> In jury trials controverted issues of fact are for the jury to decide. That is what juries are for. To hold that a judge should set aside a verdict just because he would have reached a different conclusion would substitute judges for juries. It would relegate juries to unimportant window dressing. That we cannot do. . . .
>
> The record discloses no prejudicial error in the trial. The verdict was within the evidence. The jury has spoken. The parties had a fair trial. The court may not arbitrarily substitute its opinion for the conclusion of the jury.

■ In similar vein, we said this in Northrup v. Miles Homes, Inc., 204 N.W. 2d 850, 861 (Iowa):

> Where, as here, the disputes are principally factual, and there is substantial evidence to support the jury's determination of these facts, the judge should not grant a new trial merely because reasonable men might disagree with the jury's conclusion.

The courts in general hold that when a verdict is amply supported by evidence, a trial court abuses its discretion by granting a new trial on the ground that it would have reached a different result. Cano v. Neill, 12 Ariz.App. 562, 473 P.2d 487; Martin v. Smith, 103 Cal.App.2d 894, 230 P.2d 679; Scott v. Matsuda, 127 Colo. 267, 255 P.2d 403; Seaver v. Stratton, 133 Fla. 183, 183 So. 335; Sanchotena v. Tower Co., 74 Idaho 541, 264 P.2d 1021; Dailey v. Hill, 99 Ill.App.2d 474, 241 N.E.2d 683; Kincheloe v. Rygg, 152 Mont. 187, 448 P.2d 140; Schmidt v. Allen, 303 S.W. 2d 652 (Mo.); Muhlhauser v. Archie

Campbell Constr. Co., 160 N.W.2d 524 (N. D.); Fry v. Alexander, 290 P.2d 397 (Okl.); Bohner v. Eastern Express, Inc., 405 Pa. 463, 175 A.2d 864; Pollesche v. Transamerican Ins. Co., 27 Utah 2d 430, 497 P.2d 236; Roberts v. Southern Ry., 151 Va. 815, 144 S.E. 863, reh. den. 151 Va. 815, 145 S.E. 255.

■ We turn to the record here. The claim of Blocker's executor involved three main issues; negligence of Lappe, proximate cause, and damages. The executor introduced substantial evidence in support of each issue. Lappe and Johnson asserted an affirmative defense to the claim involving two issues: negligence of Blocker himself and proximate cause. They introduced substantial evidence on those issues—mainly speeding—but they had the burden of proof on such issues and seldom does a party having the burden of proof sustain that burden as a matter of law. Hepp v. Zinnel, 199 N.W.2d 68 (Iowa). Moreover, the executor introduced substantial evidence that Blocker was not speeding. The verdict for the executor was amply supported by evidence, and the trial court could not substitute its views for those of the jury notwithstanding the court's apparent misgivings about the weight to be accorded the conclusions of accident-reconstruction experts.

We have combed through the trial proceedings in search of some basis which would warrant setting the verdict aside. The court's rulings throughout the trial were fair and as favorable to Lappe and Johnson as they could expect; no misconduct of counsel or jurors appears; the instructions were lucid and covered the issues; and the damages allowed were reasonable in amount. The only possible basis for overturning the verdict would be the duration of the jury deliberations.

■ II. *Jury Deliberations.* The trial court believed that the jury should have given the evidence and instructions more mature consideration, particularly the reconstruction expert's testimony and the in-

struction that the jury was not required to take the expert's testimony as gospel.

The facts and issues at the trial were not complex. Two vehicles collided. The main charge against one of them, the truck, was failure to yield the right of way to the car on Highway 169. The main charge against the car was speed. The evidence was thoroughly presented on both sides, and the court read the instructions to the jury. The court did not give a verdict-urging instruction. Nor does the record show that the jury hastened its verdict in order to permit one or more jurors to get away for other matters. Nothing indicates flippancy by the jury.

The general rule, with very few exceptions, is that "shortness of time taken by a jury in arriving at its verdict has no effect upon the validity of the verdict either in civil or criminal cases." 53 Am.Jur. Trial § 908 at 107 (Supp.1973). Iowa law does not prescribe a minimum period for deliberation except with less-than-unanimous civil verdicts. R.C.P. 203; Ives v. Swift & Co., 183 N.W.2d 172, 177 (Iowa) (verdict in an hour and a half in negligence case: "The short period of deliberation alone does not indicate the jury failed to give the case careful and thoughtful consideration."). Indeed, our statute in criminal cases provides, "After hearing the charge, the jury may either decide in court or retire for deliberation." Code 1973, § 780.36. See 89 C.J.S. Trial § 462 at 93 ("Generally, where the law does not positively prescribe the length of time a jury shall consider their verdict, they may do so within a very short time after retirement or in some cases without retiring at all."). Appellate courts have reversed new-trial orders based on shortness of jury deliberations. Park v. Belford Trucking Co., 165 So.2d 819 (Fla.App.), cert. disch. 174 So.2d 398 (Fla.); Mahoney v. Smith, 78 R.I. 56, 78 A.2d 798; Casey v. Williams, 47 Wash. 2d 255, 287 P.2d 343; Johnson v. Howard, 45 Wash.2d 433, 275 P.2d 736; Mulka v. Keyes, 41 Wash.2d 427, 249 P.2d 972.

Cases on the subject are gathered in Annot. 91 A.L.R.2d 1220.

Moreover, nothing in our law requires the jury to read the instructions after the judge has performed his duty to read them aloud. R.C.P. 196. In some jurisdictions the jury is not even allowed to have the written instructions, and in some (including Iowa in civil cases under $1,000) the instructions are oral. 53 Am.Jur. Trial § 935 at 665; 89 C.J.S. Trial § 468 at 107–108.

Nothing about the court's instructions on expert testimony, read by the court to the jury, is obscure or complicated, requiring extended concentration. Two brief, clear instructions are involved. In one of them the court told the jury that expert testimony "should be considered in connection with the knowledge, skill, and experience possessed by the witness; but it is solely the province of the jury to say what weight it should receive. The opinions expressed by these witnesses are not binding upon you, but it is your duty, from all the evidence and the facts and circumstances in the case, including the testimony of the expert witnesses to determine the questions of fact now submitted to you." In the other instruction, dealing with hypothetical questions, the court told the jury, "The value of such evidence depends upon whether the facts stated in the hypothetical question are correct and true, and established by the evidence." The instruction continued that if the facts in the question are true, "then the opinions based thereon may and should receive just such weight and credit as you believe them entitled to receive," otherwise the opinions should not be given weight.

After consideration of the first two principal issues in the appeal, we hold that the grant of a new trial was not warranted.

III. *Motion for Directed Verdict.* What we have already said makes clear that the trial court properly overruled

Lappe and Johnson's motion to direct a verdict. Goettelman v. Stoen, 182 N.W.2d 415 (Iowa).

Since the motion for new trial should have been overruled, we return the case to district court with directions to reinstate the judgment in favor of Blocker's executor. We have considered the parties' other arguments, but they do not change the result.

Reversed and remanded with directions.