UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Beales, Causey and White
Argued at Alexandria, Virginia


PATRICK MICHAEL SCHREIBER, ET AL.

           MEMORANDUM OPINION* BY
v.   Record No. 0632-24-4   JUDGE KIMBERLEY SLAYTON WHITE
            JANUARY 20, 2026
W. BARTLETT SNELL, ET AL.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Tania M.L. Saylor, Judge

John S. Koehler (Christopher M. Di Risio; David D. Armistead III;
The Law Office of James Steele, PLLC; Carluzzo Rochkind &
Smith, P.C., on briefs), for appellants.

Juli M. Porto (Robert E. Scully, Jr.; Wendy E. Cousler; Blankingship
& Keith, P.C., on brief), for appellees.


Following the dissolution of a corporate entity, appellees, W. Bartlett Snell and

PowerSource Solutions, Inc. (collectively "Snell"), and appellants, Patrick Michael Schreiber,

Leslie Schreiber, Matthew Schreiber, Double M&W, Inc., and Country Roads, LLC (collectively

"the Schreibers"), engaged in arbitration and litigation resulting in favorable outcomes for Snell.

In this appeal of the trial court award, appellants make four assignments of error. (1) The circuit

court erred in allowing appellees, Snell, to present witnesses not properly identified and in

disallowing the testimony of the Schreibers' expert witness, Barbara Hutto. (2) The circuit court

erred in finding the Schreibers liable for the claims pled based on transactions that were

characterized as distributions, fraudulent, and without consideration; and for finding Patrick

Michael Schreiber in control of Double M&W and Mike's Flooring Companies while also

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

finding all board members liable for the transactions. (3) The circuit court erred in ordering that the transactions, property, and monies at issue be surrendered for satisfaction of Snell's claims instead of unwinding them.[1] And, (4) the circuit court erred in adopting the jury's factual findings to form the basis of the court's ruling on the equitable claims at issue, thus rendering the equitable standard of proof lower than it should have been.

After providing a brief background on the facts of this case and addressing the merits of the Schreibers' assignments of error, we affirm the ruling by the circuit court.

BACKGROUND

This case involves legal and equitable claims by a creditor related to the dissolution of a corporate entity. Patrick Michael Schreiber ("Michael") and his wife, Leslie Schreiber ("Leslie"), jointly owned all shares of Double M&W, Inc. (previously named Mike's Flooring Companies) and acted as its officers and directors; their son, Matthew Schreiber, also served as an officer and director. Michael and Leslie also owned Country Roads, LLC. W. Bartlett Snell ("Snell"), who owned a Virginia stock corporation called PowerSource Solutions, Inc. ("PowerSource"), was employed as Double M&W's chief operating officer starting in March 2014 and subsequently as president and director starting in February 2019. He resigned in April of 2019.

Double M&W entered dissolution in December of 2019. Snell demanded that Double M&W's board of directors pay his compensation package based on his contract, which provided a full value award granting him "in effect a 25% equity stake in [Double M&W]" to be paid within 90 days of Snell's voluntary resignation. Snell won a favorable arbitration award—

---

[1] Appellants also claim as an assignment of error that "The Circuit Court erred in finding . . . that Defendants were on notice that Plaintiffs were creditors of Mike's Flooring Companies from the date of the June 20, 2019 letter from Plaintiffs to Mike's Flooring Companies." However, there is no further mention of the assignment of error anywhere else in the brief and no argument was presented on it. We find appellants have waived this assignment of error and do not consider it. Rule 5A:20; *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017).

$1,803,977.13 owed to him personally and $29,965.64 to PowerSource—a large part of which was based on Snell's equity stake in Double M&W's valuation amount. These awards were later confirmed by the circuit court.[2]

Snell then sued the Schreibers, alleging that in the dissolution process, they had fraudulently conveyed Double M&W assets to Country Roads and structured the sale of Double M&W assets so that the Schreibers personally kept "substantial valuable assets." The suit alleged that the Schreibers made improper shareholder distributions, misapplied Double M&W's assets to creditors, and fraudulently transferred its assets. Snell's amended complaint sought to void the transfers and to make the Schreibers personally liable for Double M&W's debts, which included the arbitrations award.

According to a scheduling order entered by the trial court on March 27, 2023, counsel was to exchange witness lists at least 15 days before trial. Trial was set to commence on January 29, 2024. As acknowledged by the Schreibers, the deadline for the exchange would be Sunday, January 14. The Schreibers requested a witness list much earlier in discovery, in their interrogatories, and Snell answered that they had "not made any decision regarding expected witnesses or the provision of expert testimony in this case," but that they would "supplement these interrogatory responses" when the decisions were made. No motion to compel a list was filed by the Schreibers.

Snell filed a witness list with the circuit court on Friday, January 12, 2024 at 3:39 p.m., then sent it to the Schreibers by email at 5:55 p.m. and by regular mail the same day. With the exception of three individuals, all those listed on the witness list had been listed in discovery responses as persons with knowledge of the facts of the case. The three not previously identified

_____

[2] The confirmation of the arbitration awards is not a part of this appeal.

were custodians of records relevant to previously disclosed documents.[3]  In addition, the witness list included Snell, a party to the case, who had already been deposed by the Schreibers.

The Schreibers, in a pre-trial motion, moved the court to exclude Snell's witnesses from testifying at trial alleging that Snell waited so long—2 years, 4 months, and 17 days from filing their claim—to produce a witness list.  They also argued that Snell did not "produce" a witness list until Wednesday, January 17 because Snell sent the list via mail and email on a Friday after business hours and the circuit court and clerk's office were closed on the intervening days.  The Schreibers claimed that this makes Snell's production of their witness list "untimely" either by failing to meet the requirements of the scheduling order or by failing to "seasonably supplement" their discovery responses.

On the first day of trial, the trial court addressed the Schreibers' motion to exclude Snell's witnesses.[4]  The court denied the motion, finding that all but four of the witnesses on the list were "identified in discovery in some mechanism or manner" and "[t]he [c]ourt simply does not find that there's any undue prejudice in connection with this matter."  On the same day, the Schreibers admitted when questioned by the court that Snell had produced the list in compliance with the scheduling order.  The judge asked, "Well, so they did follow the scheduling order, right, because they did file their witness and exhibit list timely?"  Counsel for the Schreibers replied, "Yes, your Honor."

---

[3] The Schreibers had previously objected to the authentication of the documents, resulting in the need for the authenticating witnesses.

[4] Although the Schreibers' motion had also requested a continuance, they abandoned that request, indicating that "I don't want a continuance . . . .  We are ready to go," even before the court heard argument or ruled on the motion to exclude.  Furthermore, following the ruling of the court on the motion to exclude, the Schreibers never pursued the continuance request.  We find any allegation of error relating to the continuance request waived.  Rule 5A:18.

The Schreibers filed a notice identifying Barbara Hutto, CPA, as an expert witness. According to the Schreibers' disclosure, in her testimony, she was expected to "opine . . . that she saw no financial evidence that any financial fraud, including but not limited to fraudulent conveyances, took place in this matter." She would also testify "that there was no misapplication of [Mike's Flooring Companies] assets post sale to any individual Defendant; and no fraudulent transfers were identified." Snell filed a motion to exclude Hutto's expert testimony on December 29, 2023, citing that her statements would be "pure legal opinions." The motion was denied without prejudice.

Snell renewed the motion at trial. Counsel for the Schreibers indicated that testimony regarding fraud and fraudulent conveyances had been withdrawn from Ms. Hutto's planned testimony. This left the issue of her testimony concerning misapplication of Mike's Flooring Companies assets post sale. The circuit court explained that, upon initial review of Ms. Hutto's expected testimony, "everything in that paragraph [of the disclosure statement about Ms. Hutto] was a legal conclusion." In discussion, the circuit court reasoned, "[t]hat's a legal conclusion . . . whether or not these specific transfers were, in fact, proper in the context of a company in a dissolution that is insolvent." In the end, the circuit court held that Ms. Hutto's testimony would either be legal opinion or "simply attempting to bolster the testimony that has already been received." It also concluded that there was no disclosure as to any other testimony that Ms. Hutto might offer. Thus, the circuit court granted Snell's motion to exclude Ms. Hutto's testimony.

A jury heard evidence and only decided the legal claims regarding the shareholder distributions and management of Double M&W's assets. The circuit court, resolving the equitable claims of whether to void the transfers declined "to use the jury in an advisory capacity," and instead considered "all of the evidence" presented at trial to render a judgment in equity.

The jury found that the Schreibers unlawfully distributed $1,343,437 of Double M&W's assets and failed to pay that amount to cover the debt owed to Snell. The jury also found that Leslie received $682,063 and Michael received $661,374 of that distribution. After affirming the jury's verdict, the circuit court found that the Schreibers made those conveyances "for the purpose of hindering, delaying or defrauding creditors." The circuit court ordered that the fraudulently conveyed property be used to satisfy Snell's judgment and made each Schreiber personally and jointly liable for the judgment. By final order entered on March 23, 2024, the circuit court entered its judgment and awarded Snell's attorney fees.

The Schreibers timely appeal, arguing that the circuit court erred in several evidentiary rulings and in finding them liable for the transfers. We address each of those preserved below.

ANALYSIS

A. Exclusion and Inclusion of Certain Witness Testimony

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Warnick v. Commonwealth*, 72 Va. App. 251, 263 (2020) (quoting *Amonett v. Commonwealth*, 70 Va. App. 1, 9 (2019)). Courts abuse their discretion under three conditions: (1) "when a relevant factor that should have been given significant weight is not considered"; (2) "when an irrelevant or improper factor is considered and given significant weight"; or (3) "when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." *Turner v. Commonwealth*, 284 Va. 198, 206 (2012) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Creamer v. Commonwealth*, 64 Va. App. 185, 194 (2015) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753 (2005)). "This principle necessarily implies that, for some decisions, conscientious

jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable." *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013).

Like the admissibility of evidence being within the broad discretion of the trial court, so, too, are the sanctions to be applied, or not, to any discovery violations. "Because the trial court 'exercises broad discretion in determining the appropriate sanction,' this Court reviews its decision for an abuse of discretion." *Galloway v. County of Northampton*, 299 Va. 558, 563 (2021) (quoting *Landrum*, 282 Va. at 352. "When we say that a circuit court has discretion, we mean that 'the [circuit] court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Galiotos v. Galiotos*, 300 Va. 1, 10 (2021) (alteration in original) (quoting *Landrum*, 282 Va. at 352).

*1. Inclusion of Snell's Witness Testimony*

On brief, the Schreibers continue to maintain the false statement that "Snell did not produce a witness list until January 17, 2024, just 11 days before trial." At the motions hearing, counsel, however, agreed with the trial judge that Snell, in fact, did file the witness list timely and in compliance with the scheduling order (requiring filing on or before January 14).[5] This concession narrows the Schreibers' challenge to the trial court's decision to allow the testimony of Snell's witnesses. Simply put, despite conceded compliance with the scheduling order, should the court have excluded witnesses because discovery responses were not earlier supplemented? The Schreibers maintain that the failure to supplement interrogatory responses constituted a discovery violation that resulted in prejudice.

In evaluating the motion and the alleged prejudice, the trial court considered the impact the timing of the witness disclosure had on the Schreibers' case. The trial court reviewed the list

---

[5] At oral argument before this Court, counsel also agreed that the witness list was filed in a timely fashion and in compliance with the trial court's order.

of witnesses and determined that all but four individuals on the list were "identified in discovery as persons with knowledge." Three were "effectively custodians of records" called in "with respect to authenticating documents because [the Schreibers] objected to the certification." The last was Snell himself, whom the Schreibers had deposed. The trial court further found that the other witnesses listed were sufficiently "identified in discovery in some mechanism or manner" and that there was "full opportunity for those witnesses to be interviewed" and "to be deposed if that was necessary."

The trial court was clear in the recognition of the timing of the trial witness disclosures. The trial court not only reviewed the list filed within the timeline set forth in the order but also the list of those with knowledge identified in discovery responses. The trial court evaluated the testimony expected from the witnesses. Finally, the trial court considered any prejudice that could be suffered by the Schreibers. We find no abuse of discretion in the trial court's denial of the motion to exclude Snell's witnesses.

### 2. *Exclusion of Schreibers' Expert Witness Testimony*

The standards for abuse of discretion stated above apply both to the inclusion and exclusion of witness testimony or other evidence. On that basis alone we can conclude that the circuit court did not abuse its discretion in excluding Ms. Hutto's expert testimony. While an expert witness is permitted to testify as to facts that constitute the ultimate issue in a case, "in no event shall such witness be permitted to express any opinion which constitutes a conclusion of law." Code § 8.01-401.3(B). "This Court has held that witnesses are precluded from 'characterizing acts or conduct as careful, careless, . . . proper, [or] prudent,'" among other things. *Harman v. Honeywell Int'l, Inc.*, 288 Va. 84, 99 (2014) (quoting *Davis v. Souder*, 134 Va. 356, 362 (1922)).

Even if the Schreibers had attempted to get Ms. Hutto to testify to issues that were not conclusions of law, in the circuit court's judgment, these additional issues were not disclosed

- 8 -

previously to Snell, as required by the trial court's order. The Schreibers attempted to characterize Ms. Hutto's testimony as being about "one-to-one transactions," meaning she would describe transfers of assets based only on adequate consideration. When the circuit court took issue with her applying the term "consideration" to specific instances, the Schreibers agreed to exclude any mention of adequate consideration. *See Price v. Taylor*, 251 Va. 82, 86 (1996) (excluding testimony from lawyers that there was adequate consideration in a contract). When the Schreibers proposed limiting Ms. Hutto's testimony to statements about how Mike's Flooring Companies' financial statements "adhered to . . . general standards and principles for accountings," the circuit court responded, "That's not in this disclosure, so she is not going to be able to say that."

Based on the general discretion owed to the circuit court and the reasons given for exclusion of Ms. Hutto's testimony, we find that the circuit court did not abuse its discretion in excluding the Schreibers' expert witness testimony.

## B. Personal Liability for Transactions

The Schreibers characterize the claims against them as attempts by Snell to pierce the corporate veil. Were that true, "the Supreme Court 'has been very reluctant to permit veil piercing,' and it has consistently held that 'only "an extraordinary exception" justifies disregarding the corporate entity and piercing the veil.'" *Pae Nat'l Sec. Sols., LLC v. Constellis, LLC*, 83 Va. App. 252, 269 (2025) (quoting *C.F. Trust, Inc. v. First Flight L.P.*, 266 Va. 3, 10 (2003)). "The Court will not disregard a corporate entity 'unless it is proved that the corporation is "the *alter ego*, alias, stooge, or dummy of the individuals sought to be [held personally accountable]."'" *Transparent GMU v. George Mason Univ.*, 298 Va. 222, 245 (2019) (alteration in original) (quoting *RF&P Corp. v. Little*, 247 Va. 309, 316 (1994)). "[O]ne who seeks to disregard the corporate entity must show that the shareholder sought to be held personally liable has controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a

crime, to commit an injustice, or to gain an unfair advantage." *O'Hazza v. Executive Credit Corp.*, 246 Va. 111, 115 (1993). "Piercing the corporate veil is justified when the unity of interest and ownership is such that the separate personalities of the corporation and the individual no longer exist and to adhere to that separateness would work an injustice." *Id.*

However, this is not a case of piercing the corporate veil. There is no mention of piercing the corporate veil or its elements in Snell's complaint. The jury instructions list only the Virginia Stock Corporation Act as applicable law and nowhere address the elements of piercing the corporate veil. Further, none of the applicable law mentioned in the complaint—Code §§ 13.1-692, 13.1-746.3, 13.1-746.1, 55.1-400, 55.1-401, and the "Trust Fund Doctrine"— require the elements of piercing the corporate veil to be met.

The first three statutes pertain to legal claims according to the traditional law and equity distinction, and all are part of the Virginia Stock Corporation Act. Code § 13.1-692 holds personally liable a director who "votes for or assents to a distribution in excess of what may be authorized and made pursuant to this chapter or the articles of incorporation . . . ." This statute requires "the party asserting liability [to] establish[] that when taking the action the director did not comply with § 13.1-690," which outlines general standards of conduct for directors. *Id.* Code § 13.1-746.3 requires a director of a "dissolved corporation to apply its remaining assets to discharge or make reasonable provision for the payment of claims . . . ." Finally, Code § 13.1-746.1(D) describes the enforcement rights of creditors when a dissolved corporation fails to give them notice. A creditor can enforce a claim "against a shareholder of the dissolved corporation to the extent of the shareholder's pro rata share of the claim or the corporate assets distributed to the shareholder in liquidation, whichever is less." *Id.*

However, there is also no need to fully address the findings of the circuit court for another reason—the Schreibers have waived any objections to them by failing to develop them

on brief. In challenging the personal liability of individual parties, the Schreibers argue that (1) the court erred in upholding a jury's determination that transfers of cash or other property were distributions, because it was not proven that they constituted distributions according to Code § 13.1-603. (2) "Leslie and Matthew were not alleged to have participated directly in the transfer of assets from Double M&W and could not be personally liable for the transfers from the corporation . . . ." Lastly, (3) the trust fund doctrine could not apply to Matthew or Leslie, since neither was in control of the corporation at the time of the transfers.

It is unclear what objections the Schreibers are trying to make. For example, is (1) a challenge to the circuit court's legal interpretation of "distribution" or to the jury's finding that the transfers fit the definition? If the former, as Snell has pointed out, the Schreibers did not object to the circuit court's definition used in the jury instructions, which overlaps much of their own proposed definition. If the latter, then the Schreibers acknowledge that "if the circuit court's rulings are upheld, the facts presented are sufficient to sustain the jury's verdicts under that standard of review." In both cases, the Schreibers have admitted the validity of the circuit court's upholding the jury determination. Whatever other objection they may have had, this is at least one valid basis to support the circuit court's decision. *See Manchester Oaks Homeowners Ass'n v. Batt*, 284 Va. 409, 421-22 (2012). Thus, the Schreibers have waived any objection they might have against the jury determination that certain transfers were distributions.

The same can be said for (2) and (3). If the objection is that the circuit court mischaracterized the law for these, they did not preserve any objection to the jury instructions that represented the circuit court's characterization of the law. Instructions 14, 22, and 28 characterize liability for various acts of directors. Instruction S identifies Michael, Leslie, and Matthew all as directors of Double M&W (and Mike's Flooring Companies). If the objection is that the jury erred, the Schreibers have acknowledged the jury's verdict is supported. In either

case, the Schreibers have waived any objection to the personal liability findings of the circuit court.

### C. Assets to be Retransferred

Code § 8.01-501 states that "[e]very writ of fieri facias shall . . . be a lien from the time it is delivered to a sheriff or other officer . . . to be executed, on all the personal estate of or to which the judgment debtor is . . . possessed or entitled . . . ." Yet, this leaves open the question of how the lien should be enforced. Half of Snell's claims were claims of law and the other half were claims in equity. Equitable statutes like Code §§ 55.1-400 and 55.1-401 "contain a specific remedy—a judicial decree declaring the conveyance void as to the transferor's creditors. 'This remedy returns the fraudulently conveyed assets to the transferor, but, as a general rule, it does not authorize "a court to award an in personam judgment when the transaction is set aside."'" *Grayson v. Westwood Bldgs. L.P.*, 300 Va. 25, 49 (2021) (footnote omitted) (quoting *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 256 (2017)).

In contrast, the legal statutes—Code §§ 13.1-692 and 13.1-746.1—impose personal liability on the directors of a corporation. Additionally, "[t]he trust fund doctrine gives creditors an equitable right of recovery against shareholders who take assets from a dissolving corporation." *Lawyers Title Ins. Corp. v. P.R.T. Enters.*, 65 Va. Cir. 271, 277-78 (Norfolk July 30, 2004) (quoting *Rapids Constr. Co. v. Malone*, 1998 U.S. App. LEXIS 4649, at *14 (4th Cir. Mar. 13, 1998)).[6] Accordingly, there would be no need to void any conveyances and retransfer them to the corporation.

Whether according to the equitable statutes or the legal statutes, however, "[a] debtor's 'right to prefer one creditor over another is thoroughly established' by Virginia precedent." *Grayson*, 300 Va. at 54 (quoting *Peters v. Bain*, 133 U.S. 670, 686 (1890)). Based upon this

---

[6] While neither cited case is controlling authority, we cite them as persuasive.

principle, it appears the proper redistribution of assets would require the debtors (either the trustees in dissolution of Double M&W or the personally liable parties themselves) first to satisfy creditors according to the creditors' relative priority, but otherwise at the debtors' discretion.

There is some dispute between the parties about whether there are creditors besides Snell and there is nothing in the record to indicate one way or another. The Schreibers claim that "Double M&W has additional creditors who would have a claim on assets of the corporation," but they do not cite to the record or name any. In contrast, Snell claims that the Schreibers "offered no evidence of any other judgment lien creditors, and certainly no evidence of a judgment lien creditor with priority over Snell."

The trial court order incorporates both the jury award and the judgment on the equitable claims. The language that does so is that transferees of the relevant assets "retransfer, reassign, and reconvey the following fraudulently transferred property *in specie* to the trustees in dissolution of Double M&W, Inc. . . . . to be delivered by them to the Sheriff of Loudoun County to be subject to the satisfaction of the judgment lien in favor of [Snell] . . . ." According to the equitable statutes, nothing here appears to be out of order. It does not foreclose the debtor's rights regarding their discretion over creditor priority and it requires retransfer of assets to the corporation based on its judgment that the original transfers are void. Thus, there is nothing improper about the circuit court's order.

D. Standard of Proof: Preponderance of Evidence or Clear and Convincing

The Schreibers assert as their fourth assignment of error that the court, by relying on the jury's factual findings, used a preponderance of evidence standard to adjudicate the equitable claims before it, instead of a clear and convincing standard. The Schreibers point to the Rules of the Supreme Court of Virginia, that "*applicable* factual determinations by the jury will be used by the judge in resolving the non-jury issues in the case." Rule 3:22(e) (emphasis added). Their

- 13 -

contention is that "the factual determinations of the jury in this case were not directly applicable to the issues which the circuit court had expressly stated it would reserve for its own resolution."

The Schreibers' argument here is without merit. They make no reference to which of the jury's factual findings the circuit court used or in what way they were not directly applicable to the equitable claims. In contrast, Snell claims that "the underlying factual issues determined by the jury are also the basis of [Snell's] equitable claims . . . ." The circuit court writes in its final order that Snell "proved by clear and convincing evidence," not preponderance of evidence, the factual basis for the judgment. Finally, by making the claim they do, the Schreibers undermine their own position. If the factual findings of the jury were not *applicable* to the equitable claims, then it would not be possible for the circuit court to use them as the basis for any standard of evidence at all, preponderance or otherwise. For the Schreibers to argue that reliance on the jury determinations reduced the standard of proof to preponderance of evidence is to admit that the determinations were at least applicable factual determinations. If they are applicable, then they can be used according to Rule 3:22(e) as a basis for resolving the non-jury issues. In any case, the Schreibers have not made a convincing argument and the circuit court committed no error.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment and order.

*Affirmed.*